CLARK *v.* LOCKE.

*(Supreme Court, General Term, Fifth Department.    April 11, 1890.)*

MUNICIPAL CORPORATIONS—MORTGAGE IN PAYMENT OF TAXES.

The city of Buffalo, being authorized by title 1, § 1, of its charter, (Laws 1870, c. 519,) to take, purchase, and hold and convey real and personal property as its purposes may require, has full power to accept a mortgage on real estate as security for taxes which had accrued thereon.

Submission on agreed statement.

Action by Martin Clark against William H. Locke. The cause was submitted without action on an agreed statement of facts, as provided by Code Civil Proc. N. Y. § 1279.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Martin Clark, pro se.    Giles E. Stillwell,* for defendant.

MACOMBER, J. In the year 1873, one Balcom was the owner of real estate, situated in the city of Buffalo, upon which there was then due and unpaid to the city for taxes, including interest and additions, the sum of $10,849. A month before this time the common council of that city had agreed to receive a mortgage upon the lands of Balcom in the sum of $10,849, and such mortgage, accompanying the bond of Balcom, was accordingly executed and delivered to the city on the 29th day of January, 1873. Afterwards, and on the 29th day of April, 1883, the comptroller of the city sold these lands for nonpayment of taxes for the year 1882, and struck the same off to one George P. Sawyer, to whom was issued a certificate of sale. Sawyer, on or about the 1st day of September, 1883, sold and assigned such certificate to one Tifft. In

November. 1883, tne city of Buffalo began a suit for the foreclosure of such mortgage, making Sawyer and the executrix of the last will and testament of Balcom, together with certain creditors of Balcom, parties defendant. In the answer in that action, interposed by the executrix and certain other judgment creditors, the validity of the mortgage to the city was put in issue; but Sawyer made default in pleading. Judgment of foreclosure and sale, however, was entered in the month of January, 1886, adjudging the amount due on the bond and mortgage to be $12,396.89. A modification of this judgment, in respect to costs only, was made by the general term.[1] That case is now pending in the court of appeals undetermined. No sale has been made under such judgment. Tifft, after the purchase by him of the certificate of sale, caused notices to redeem to be served upon the city of Buffalo as mortgagee. Thereafter, and on the 1st day of July, 1885, the comptroller of the city executed and delivered to Tifft a deed of this property, which was duly recorded. William H. Locke, the defendant in this action, bought of Tifft, after the delivery to the latter of the deed, the portion of lands involved in this appeal. In November, 1888, Locke in turn executed and delivered to the plaintiff a deed of this portion of the premises, with the usual covenants of warranty. The plaintiff claims that this covenant is broken by reason of the facts relating to the mortgage given to the city, and that such mortgage is a cloud upon his title; while the defendant claims that the lien of such mortgage was cut off and extinguished by the service of the notice to redeem which was served upon the city, followed, as it was, by the delivery by the city comptroller of the deed to Tifft. The defendant also contends that the Balcom mortgage was void, as no power existed on the part of the city to take such security in payment of taxes. It follows, therefore, that if this mortgage is a lien upon this property, the plaintiff has a right of action against the defendant upon his covenant; while, if the mortgage be held not to be such lien, the complaint should be dismissed.

We are of the opinion that the city of Buffalo had the power and right to take from Balcom a mortgage in discharge or in payment of the taxes theretofore accruing upon the latter's real estate. Neither Balcom, nor any person succeeding to his right, is in a position to deny the validity of this mortgage; for, by executing the same, the mortgagor conclusively acknowledged the validity of the indebtedness, and his liability to pay the same. *Raft Co.* v. *Roach*, 97 N. Y. 378, and cases there cited. By section 1, tit. 1, of the charter of the city of Buffalo, (chapter 519, Laws 1870,) the city is authorized to take, purchase, and hold and convey real and personal property as its purposes may require. We have no doubt but that the common council, when it decided that it was expedient for the city to receive this mortgage, had full power under the charter to accept the same in lieu of the indebtedness for taxes, as the transaction amounted to nothing more than ascertaining and putting in writing the amount of the indebtedness, for the tax lien itself was in the nature of a mortgage. *Mayor* v. *Colgate*, 12 N. Y. 140. If this be so, the right to enforce the mortgage against the property covered by it necessarily follows. This proposition, as we understand it, was distinctly held in a decision at special term,[2] in an opinion annexed to the plaintiff's points, in an action of Tifft against the city of Buffalo, growing out of these precise facts. See, also, *City of Buffalo* v. *Bettinger*, 76 N. Y. 393, where it is held that a municipal corporation, in protecting its property, in collecting its debts, and generally in transacting a business of a private character, may, when not expressly prohibited, avail itself of the rights and remedies afforded to an individual. See, also, *Starin* v. *Edson*, 112 N. Y. 206, 19 N. E. Rep. 670; *Mayor* v. *Sonneborn*, 113 N. Y. 423, 21 N. E. Rep. 121; *Mayor* v. *Huntington*, 114 N. Y. 631, 21 N. E. Rep. 998.

---

[1] Not reported.     [2] See note at end of case.

Nor did the service of the notice upon the city to redeem extinguish the lien of this mortgage. The foreclosure of the mortgage held by the city was begun November 17, 1883, and Sawyer was one of the defendants who did not interpose any answer, but permitted judgment to go against him by default, while certain defendants met the issue, with the result already stated. That judgment, as long as it stands, effectually cuts off any claim which Sawyer or his assignee, Tifft, can have under this certificate. The fact that steps were taken by Sawyer or his assignee after the filing of *lis pendens* in the foreclosure action, resulting in a pretended perfection of a title under chapter 275 of the Laws of 1880, is unavailing to the defendant. *Fuller* v. *Scribner,* 76 N. Y. 190.

As we answer the three questions propounded to us by the written submission in favor of the plaintiff's contention, it follows, under the agreement of the parties, that judgment should be directed in favor of the plaintiff against the defendant in the sum of $600, being the amount agreed upon by the parties as damages for the breach of the warranty, if the court should hold that there was a breach. All concur.

### NOTE.

The opinion in Tifft v. City of Buffalo, delivered at special term, Erie county, is as follows:

"DANIELS, J. This action is brought under section 1638 of the Code of Civil Procedure, for the determination of an adverse claim to real estate situated in the city of Buffalo, owned by the plaintiff. Whether he or the parties under whom he claims title were in the actual possession of the property for the period of three years prior to the commencement of the action is not a fact very clearly proven by the evidence, but, as the action has been tried and presented upon its merits for decision, this point may properly be passed over without its present definite determination, inasmuch as the examination of the evidence results in the conclusion that the action is incapable of being maintained. The plaintiff obtained two declarations of sale in form of conveyance of real estate, made by the defendant upon sales of the property for the non-payment of taxes and assessments imposed upon it in the year 1882. The amount unpaid upon one of the parcels of property was the sum of $263.43, on the 20th of March, 1885, when notice was served upon the city to redeem the property from the sale. The amount required to redeem the other parcel of the land at the same date was the sum of $128.88. Notices at that time were served upon the city to redeem the property from the sales which had been made for the non-payment of the taxes and assessments on the ground that it held a mortgage upon the property, and, by section 23 of title 7 of the Revised Charter of the city, provision was made for serving notice upon a party holding a mortgage upon the property sold, requiring its redemption from the sale within the time specified in the notices which were served. The defendant in January, 1873, received from Philo A. Balcom, who was then the owner of this property, and under whose executrix and devisee the plaintiff has also derived title, a mortgage upon it to secure the payment of $10,849, in five equal annual installments, with interest at the rate of 7 per cent., payable semi-annually from the 1st of February, 1873. Payments were afterwards made upon the mortgage, to and including the 5th day of September, 1877, and there was due upon it, on the last day of December, 1884, over and above such payments, $9,149. A judgment was recovered in an action for the foreclosure of this mortgage, commenced prior to the time when the plaintiff derived any title to the property. It was tried in the superior court of Buffalo, and a judgment recovered establishing the validity of the mortgage, and determining the amount unpaid upon it. The object of the plaintiff's action is to remove this mortgage and judgment as a lien or incumbrance from the property, and that, it is insisted, he has the right to do as the assignee of the purchaser who bid in the property on the sales made of it for the non-payment of taxes. The deeds which were made to the plaintiff by the city were executed on or about the 29th of June, 1885, and upon their face convey the lands described in them, and in whole or in part included in the mortgage, pursuant to the sales made for the non-payment of the taxes and assessments; and from these facts it is apparent that what the city designed to sell, and what it intended to convey by the deeds, was not any interest it had as an incumbrancer upon the property, but the title and interest of the owner, liable to be sold and conveyed because of his default in the payment of the taxes assessed against it. The deeds, or 'declarations of sale,' as they are called, contain no warranty on the part of the city estopping or precluding it from insisting upon or enforcing its mortgage against the property, but they simply exercise the power conferred upon the officers of the city to sell and convey the interest of the owner in the property because of his failure to pay the taxes imposed upon it. They do not by any language contained in them, or anything to be implied from them, convey any other interest, or extinguish any other right, which the city had against the property beyond its right to collect the

taxes and assessments for which the titles were made, and it was upon the payment of such taxes and assessments, and the expenses and interest legally added thereto, that the property was sold, and the declarations of sales were made. In construing instruments of this description, it has been provided by the statute that 'it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law,' (2 Rev. St., 6th Ed., p. 1130, § 2;) and to ascertain such intent, where the evidence of it may be in the least degree uncertain or ambiguous. It is the duty of the court to consider the circumstances under which the instruments were executed. French v. Carhart, 1 N. Y. 96, 102.

"Applying this provision of the statute, as it must be, to these deeds or declarations of sale, and this principle of construction, no doubt, can be entertained that it was no part of the purpose of the instruments executed and delivered by the city to the plaintiff in any manner to affect, or empower him to affect, the security which it held by this mortgage for the payment of the sum of money, but what was designed was to convey to the plaintiff the title of the owner of the property, together with the right to extinguish incumbrances upon it held by any other person or persons than the city itself, and who were indirectly, at least, liable for the payment of the taxes and assessments. If this were not so, and the city and authorities were bound to redeem by the payment of taxes, interest, and expenses to protect and save the mortgage, then it is evident that nothing whatever would be accomplished by such tax-sales and conveyances; for the money paid into the city treasury for taxes, interest, and expenses would require to be at once withdrawn and paid back to redeem the property from its own sales and declarations of sales, and in that manner the taxes would be refunded to the purchaser, or, as this case is, to his assignee. That would be an entirely useless and abortive proceeding, for it would, at most, place the city and its authorities back where they were before the sales themselves were made. It would receive nothing whatever towards the payment of the taxes and assessments, but would be obliged to pay, in addition to the failure to collect, the expense made by itself, to obtain payment of the amounts. Such a proceeding as that it would be unreasonable in the extreme to suppose the legislature intended to sanction by the provisions which have been made a part of the charter of the city. It may be that their literal reading would require this result, but laws are not to be literally read or understood when that reading would be manifestly in conflict with the intention of the legislature in their enactment. What the courts are required to do is to construe the law according to its spirit and intent, (Railroad Co. v. Roach, 80 N. Y. 339, 344,) and that, in this instance, was to afford the city and its authorities the effecual means of collecting these unpaid taxes and assessments by the sale of this property; and that intent would be avoided and defeated by subjecting it literally to the provisions made concerning the redemption of the property by persons holding incumbrances from the sales. If these provisions of the statute should be construed, then, for an amount of less than four hundred dollars, the city would be obliged to relinquish a security upon which there was, at the time when the notices were served, due and unpaid an amount of upwards of ten thousand dollars, or else nullify its own proceedings by paying back to the purchaser at its sale what it had received from him for the payment and satisfaction of these taxes and assessments; and it could not have been the intent or purpose of the law to require that to be done, for it would in substance forbid all proceedings on the part of the city, under these circumstances, to enforce the collection of the taxes payable to it. The case in the foreclosure suit which was given in evidence upon the trial disclosed the fact to be that the mortgage was executed and delivered to the city to secure the payment of taxes and assessments for which the property described in it had previously been sold There is sufficient disclosed by the case to support the conclusion that the city had become the purchaser of the property under the tax-sales, and that a compromise of the amount due to it had taken place between the mortgagor and the city, resulting in the execution and delivery of the mortgage for the amount mentioned in it. It was in its effect, therefore, given to secure the future payment, of taxes and assessments previously laid upon the property, to those under which the plaintiff in this action has, in part at least, derived his title. And it has been provided by section 29, art. 7, of the Revised Charter of the city, that the sale of the property for such taxes and assessments shall be 'subject to the lien of all taxes and assessments thereon at the time of such sale,' the taxes and assessments for which the mortgage was given had manifestly been liens upon the property. The city had purchased it on the sales made for the failure to pay such taxes and assessments, and it was in a condition to complete the title against the mortgagor, then the owner of the property. But to avoid the result, and relieve him from hardship, this mortgage, together with the bonds secured by it, were taken from him, giving him five additional years to pay the amount agreed upon, instead of subjecting him to a sacrifice of his property by the enforcement of the rights of the city at that time against it. In that manner a further period of payment of the unpaid taxes and assessments at that time was extended to the mortgagor. His mortgage was the security for the future payment of such taxes and assessments, and as such the rights which the plaintiff acquired under the sales for the taxes for 1882, and the declaration or deeds made and delivered to him were subordinate to this mortgage, for he acquired such rights subject to the lien of all taxes and assessments against the property at the time of the sale;

and the lien of such prior taxes and assessments was preserved and continued through the instrumentality and intervention of this mortgage. For this reason, therefore, as well as that previously mentioned, the plaintiff has secured no right, as against the city, to have a lien of this mortgage either disturbed or extinguished in his favor as the grantee of the city. The mortgage, on the contrary, must be held to be a legal security, as it was given by the mortgagor against the property described in it, and the action of the plaintiff accordi..gly cannot be maintained, but judgment must be entered against him, together with the costs and disbursements of the action."