TALCOTT WELLS, Appellant, *v.* WILLIAM H. JOHNSTON et al., Respondents.

TAX — STATE LANDS MAY NOT BE SOLD UNDER ONEIDA COUNTY ACT (L. 1880, CH. 91) FOR NON-PAYMENT OF TAXES ASSESSED THEREON BEFORE STATE'S TITLE WAS PERFECTED. The treasurer of Oneida county is not authorized, by chapter 91 of the Laws of 1880, to sell lands belonging to the state for unpaid taxes, although such taxes were assessed and levied thereon before the lands had been conveyed to the state by the comptroller in pursuance of a sale thereof made under chapter 427 of the Laws of 1855, for the non-payment of taxes previously assessed thereon; and where state lands have been so sold by such county treasurer, after the title of the state under the comptroller's sale has been perfected, the sale is void, and the purchaser thereat obtains no title to the lands: and in an action brought by him to recover the value of pulp wood cut by him on such lands, which was seized and sold by an agent of the state, the state is not estopped by the unauthorized acts of the county treasurer from asserting and proving its title to the lands.

*Wells* v. *Johnston,* 55 App. Div. 484, affirmed.

(Argued May 15, 1902; decided May 27, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 7, 1901, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. D. Adams* and *H. R. Hadley* for appellant. Plaintiff had title to the land when the pulp wood was cut in 1899. (128 N. Y. 270 ; 152 N. Y. 204 ; 157 N. Y. 437 ; 159 N. Y. 176 ; 161 N. Y. 520 ; 162 N. Y. 84.) The case was correctly disposed of under section 1187 of the Code of Civil Procedure. (52 App. Div. 349 ; 11 App. Div. 376 ; 86 Hun, 396.) The state had no title to the premises when Wells bought and paid his bid August 11, 1881, for the tax of 1880. *(Tracy* v. *Reed,* 38 Fed. Rep. 69 ; Cooley on Taxn. [2d ed.] 509, 511.) It is competent for the state to abandon, extinguish or to dispose of any of its interests, claims, equities, liens, taxes or

lands as it pleases. An act of the legislature is a competent way to do it. (123 N. Y. 76.) The act of 1880 was an offer and promise to all citizens, which when accepted and acted upon by a purchaser, became an executed contract between the state and purchaser, under which the purchaser acquired vested rights and the state became estopped. (71 N. Y. 527; 3 Wall. [U. S.] 51; 51 N. Y. 401; 65 N. Y. 114.)

*Clarence W. Smith* for respondents. The plaintiff's deed is void because the assessors had no jurisdiction to assess the lands in question in 1880, and the county treasurer had no jurisdiction to sell and convey the same at any time thereafter under said assessment because the land then belonged to the people of the state of New York. (L. 1855, ch. 427, §§ 63, 65.) Land sold by the state, though not granted or conveyed, shall be assessed in the same manner as though actually conveyed. (1 R. S. 2953, § 6.) Under the common law the sovereign or the people was not liable to taxation and could not be assessed on any property belonging to it. (Davies on Taxn. 1; *Meriweather* v. *Garrett*, 102 U. S. 197; *Croner* v. *Cowdrey*, 46 N. Y. S. R. 559; *Croner* v. *Cowdrey*, 10 N. Y. Supp. 908; *People ex rel.* v. *Board of Assessors*, 111 N. Y. 505.) The officers who assumed to assess the land in question in 1880 had no jurisdiction to assess the same after the sale to the state in the month of October, 1877. (*Meriweather* v. *Garrett*, 102 U. S. 197; *Croner* v. *Cowdrey*, 46 N. Y. S. R. 559; *People ex rel.* v. *Board of Assessors*, 111 N. Y. 505.) The land in question having been acquired by the people of the state of New York prior to the sale by the county treasurer of Oneida county to the grantor of plaintiff was not only not liable for the assessment and collection of a tax against it, but was not a parcel or tract of the class of lands which the county treasurer was authorized by chapter 91 of the Laws of 1880 to sell for unpaid taxes. (*Brant* v. *V. C. & I. Co.*, 3 Otto, 326.) The state cannot be estopped except by a direct legislative enactment. (*Enfield* v. *Permit*, 5 N. H. 280; 6 Wait's Act. & Def. 681; *Croner* v. *Cowdrey*, 46

N. Y. S. R. 559; *Brant* v. *V. C. & I. Co.*, 3 Otto, 326; *Pulaski* v. *State*, 42 Ark. 118; *Atty.-Gen.* v. *Marr*, 55 Mich. 445; *People ex rel.* v. *Whitney's Point*, 32 Hun, 508; *Chard* v. *Holt*, 136 N. Y. 30.) The county treasurer of Oneida county, in performing the duties devolved upon him by chapter 91 of the Laws of 1880, did not act as an officer of the state, but simply as an officer directed by the legislature to carry out certain duties imposed upon him as county treasurer of Oneida county, and any improper act which he did did not in any way bind the state for any misfeasance or malfeasance or dereliction of duty. (*Reid* v. *State*, 74 Ind. 252.)

Haight, J. This action was brought to recover the value of a quantity of pulp wood, which, it was alleged, was converted by the defendants. The wood was cut by the plaintiff upon a six-hundred-acre tract of land in the town of Forestport, Oneida county, located upon the north part of the Gouverneur tract. It was seized by an agent of the state and sold to the defendants. The question presented for our determination is as to whether the land on which the wood was cut belonged to the plaintiff or to the People of the state.

The title of the state is derived through a deed of the comptroller executed on the 28th day of March, 1881, based upon a tax sale made by the comptroller in October, 1877, pursuant to chapter 427 of the Laws of 1855, for default in the payment of taxes levied upon this tract of land prior to the year 1871. The deed was recorded in the office of the clerk of Oneida county on the 30th day of June, 1882, in book of Deeds No. 414, on page 471. By section 65 of the act this deed was made presumptive evidence of the regularity of the sale and of all prior proceedings, and no question has here been raised affecting its validity.

The title of the plaintiff was derived through a deed dated the 12th day of December, 1882, executed by the county treasurer of Oneida county, based upon a sale made by such treasurer on the 18th day of August, 1881, for the sum of thirty-nine dollars, on account of a default in the payment of

taxes assessed upon the premises in the year 1880, which sale was made pursuant to chapter 91 of the Laws of 1880, known as the Oneida County Act. This deed was issued to one John Wells, the purchaser, who subsequently conveyed to the plaintiff in this action.

It will be observed that the title of the state was perfected on the 28th day of March, 1881, by the execution of the deed by the comptroller to the people of the state ; and that the sale to Wells did not take place until the following August. It, therefore, follows that at the time the sale was made by the county treasurer to Wells the title of the lands was in the state.

It is contended on behalf of the plaintiff that these lands were assessed from year to year after the sale of 1877 down to and including the year 1880, and that by the special act for Oneida county of that year, to which we have referred, the county treasurer was authorized to sell the lands for the non-payment of such taxes. We think that the lands were properly assessed for these years, for the title of the state did not become perfect until the deed was executed. The owner still had the right to redeem during the period fixed by the statute, and during such period the premises were properly assessed so that the owner, upon redemption, could not escape taxation for the intervening years ; but after the title of the state had become fully vested through the deed of the comptroller the lands were no longer assessable and no sale could be made thereof except in accordance with the express provisions of the statute. Taxation is for the support of the government, and, except in a few specified cases, none of which are involved in this controversy, it does not tax itself. The inhabitants who enjoy the protection of government in their persons and property are the persons taxed for its support, and the statutes referred to were enacted for the purpose of enforcing the payment by each individual of his proportion of such tax. The comptroller in selling real estate, for the non-payment of taxes, to individuals sells the same, subject to all the claims which the People of the state may have thereon for other taxes, liens or incum-

brances (§ 63 of ch. 427 of the Laws of 1855), but not so when the state takes the title, for then its own taxes and liens merge in the deed and the state reimburses the counties and municipalities for their share of the taxes assessed. When the state took title to these lands on the 28th day of March, 1881, the outstanding lien for taxes of 1880 became merged in the deed, and it became the duty of the comptroller to refund to the county of Oneida the money which it had paid to the state, if any, by reason of such assessment, and to pay over to the county its proportion of the taxes levied upon these lands, but the county thereafter or its treasurer had no power or right to sell the lands to reimburse itself. The law of 1880 authorized the county treasurer of Oneida county to sell the lands of corporations and individuals assessed for taxes which remained unpaid, but it did not authorize him to sell lands which belonged to the state. It; consequently, follows that the sale made by the treasurer to Wells on the 18th day of August, 1881, was without statutory authority and void.

It is now contended that the state is estopped by reason of the acts of its officers. The answer to this contention is, that the act of the treasurer of Oneida county in making the sale was unauthorized, and the state is never estopped by the unauthorized acts of its officers. If the local authorities in the city of Albany should see fit to assess a tax upon the lands upon which the Capitol stands and this should be followed by a sale by the county treasurer, would the state lose title to its Capitol and grounds? Certainly not; no title would pass to the purchaser, for the reason that the acts of the local officers would be without authority and the state cannot be deprived of its property by estoppel or otherwise by the unauthorized acts of such officers.

The order of the Appellate Division should be affirmed and judgment absolute ordered for the defendants upon the stipulation, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, MARTIN and VANN, JJ., concur.

Ordered accordingly.