(109 App. Div. 119.)

### RAQUETTE FALLS LAND CO. v. HOYT et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

1. TAXATION—TAX TITLES—VALIDITY.

The source of the title of the plaintiffs was a grant by letters patent from the state to a certain railroad company. In 1848 the land was sold by the state comptroller for unpaid taxes levied and assessed in 1840–1843, and on such sale was bid in by the comptroller for the state. No conveyance was executed until October 10, 1855, when the comptroller, in consummation of the tax sale, made his release in the form of a conveyance of the lands to the state, which conveyance was recorded in the office of the secretary of state. In December, 1852, the same lands were sold by the treasurer of the county in which they were situate for unpaid taxes levied and assessed in 1849, and bid off by defendants' remote grantor, to whom a deed, duly executed under the statute by the county judge and county treasurer, was delivered December 11, 1854, and recorded in the clerk's office of the county where the lands were situate December 5, 1885. *Held* that, in view of the course of legislation exemplified in Rev. St. (3d Ed.) pt. 1, c. 13, tit. 3, Laws 1850, p. 657, c. 298, § 81. Laws 1855, p. 799, c. 427, § 92, and Laws 1866, p. 1824, c. 820, § 1, the sale of land by the county for taxes was unauthorized, and conferred no title on defendants; the levy thereof having been made before the period for redemption expired, and the sale having been had and deed executed before the state became the owner of the land.

2. SAME—EXEMPTIONS.

Plaintiff claimed title to certain land under a conveyance from the comptroller on a sale in 1877 for unpaid taxes levied and assessed in 1869. The defendants claimed title to the same land under a tax sale of 1849, and the conveyance by the comptroller to the state in 1855, which title, on November 11, 1863, through various mesne conveyances, became vested in a corporation organized under the General Railroad Law, Laws 1850, p. 211, c. 140, and Laws 1863, p. 429, c. 236, an act entitled "An act to encourage and facilitate the construction of a railroad along the valley of the upper Hudson into the wilderness in the upper part of the state, and the development of the resources thereof." Section 2, p. 430, provided that the corporation, when formed, might purchase, take, and hold lands in the wilderness, and that all such lands should be free and exempt from all taxation until September 12, 1883. Section 5 provided that such exemption should cease unless the company should construct and put in operation certain specified portions of its road. Section 6, p. 431, provided that the evidence of the construction and operation of the railroad mentioned in the fifth section should be the affidavit of the president, vice president, or chief engineer of the corporation. Laws 1868, p. 2004, § 850, extended the time for the construction of the road. The proofs in accordance with the statute were furnished, and the referee found that the company duly complied with the conditions imposed on it by Laws 1863, p. 429, c. 236, and the acts amendatory thereof and supplemental thereto, on which it was entitled to have its lands relieved from taxation. *Held*, that the grant of the franchise by the state to the corporation, by which it was provided that the lands purchased by the corporation should be free and exempt from all taxation for the time specified, constituted an inviolable contract, binding on the state, and had the effect of exempting the company from all taxation during the period mentioned in the act; and hence title adversely to the corporation could not be acquired by a sale of such land for unpaid taxes levied and assessed during the period of exemption.

Appeal from Judgment on Report of Referee.

Action by the Raquette Falls Land Company against Albert Hoyt and others. From a judgment in favor of plaintiff for $4,849.39, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

E. C. Emerson, for appellant.

George N. Ostrander, for respondents.

NASH, J. This action is in trespass, brought to recover the value of timber cut and removed by the defendants from 343 acres on lot No. 4, and 275 acres on lot No. 19, Watson's East Triangle, Herkimer county, which lands were wild and unoccupied. Each party claims title to the lots under separate tax sales, but, the source of title as to each lot being different, it is necessary to consider the question of title as to each separately.

The source of title of the appellant to lot 4 is a grant by letters patent from the people of the state to the Sackett's Harbor & Saratoga Railroad Company. In 1848 this land was sold by the state comptroller for unpaid taxes levied and assessed in 1840–1843, and on such sale was bid in by the comptroller for the people. No conveyance was executed until October 10, 1855, when the comptroller, in consummation of the tax sale, made his release in the form of a conveyance of the lands to the people of the state, which conveyance was recorded in the office

of the Secretary of State. In December, 1852, the same lands were sold by the county treasurer of Herkimer county for unpaid taxes levied and assessed in 1849, and bid off by David Post, to whom a deed, duly executed under the statute by the county judge and county treasurer, was delivered December 11, 1854, and recorded in Herkimer county clerk's office December 5, 1885. The parties claim title under these respective conveyances; the plaintiff by deed from the railroad company, the defendants by mesne conveyances from David Post. The tax sale of 1848 was under the Revised Statutes (Rev. St. [3d Ed.] pp. 450–469, pt. 1, c. 13, tit. 3), which provided that taxes upon non-residents' lands should be returned by the county treasurer to the comptroller. If the tax remained unpaid for two years from May 1st following the assessment, the comptroller was to advertise the land for sale, sell enough of each parcel to pay taxes and charges, and upon the sale give to the purchaser a certificate, showing when he would be entitled to a deed. The owner was given the right within two years to redeem. If not redeemed, a conveyance was to be made to the purchaser, his heirs or assigns, in the name of the people of the state, of the real estate sold, which should vest in the grantee an absolute estate in fee simple, subject, however, to all the claims which the people of the state might have therein for taxes or other liens or incumbrances. The comptroller was required to bid in for the state at any sale of lands for taxes every lot of land put up for which no person offered to bid, and make a certificate of sale, describing the lands purchased, and specify the time when the people of the state would be entitled to a deed. Such purchases should be subject to the same right of redemption as purchases by individuals, and, if the lands sold should not be redeemed, the comptroller was to execute a release therefor to the people of the state, which should have the same effect, and become absolute in the same time and in the performance of like conditions, as in the case of conveyances to individuals. By chapter 298, p. 641, of the Laws of 1850, these provisions of the Revised Statutes were repealed. By this new tax law, which took effect April 10, 1850, the county treasurer was required to return to the comptroller a list of taxes unpaid on nonresident lands. If the tax remained unpaid two years from May 1st following the assessment, the comptroller was to transmit, before August 1st thereafter, to the county treasurer, a list, describing each tract or lot of land, with the amount of tax and charges for which the same was to be sold, and upon the receipt thereof the county treasurer was to advertise and sell, on the first Tuesday of December, and give to the purchaser a certificate describing the lands purchased, the sum paid, and the time when the purchaser would be entitled to a deed, and transmit to the comptroller a statement of such sales. The owner was given the right to redeem at any time within two years after the sale.

"Sec. 81. If no person shall redeem such lands within two years, the treasurer and judge of the county where the lands were sold, shall, at the expiration thereof, execute to the purchaser, his heirs or assigns, in the name of the people of this state, a conveyance of the real estate so sold, which shall vest in the grantee an absolute title in fee simple; subject however to all the claims which the people of this state may have thereon for taxes, or other liens or incumbrances."

By chapter 427, p. 781, of the Laws of 1855, the tax law of 1850 was repealed, and the provisions of the Revised Statutes substantially re-enacted. By section 92, p. 799, of this act, it was provided that the repeal should not in any manner affect any tax levied or assessed in either of the years 1849, 1850, and 1851, nor any proceeding for the collection thereof, by sale of the land taxed or otherwise, nor the rights of any person which have accrued or may accrue by reason of any such sale or proceeding, nor the powers of the county treasurer in relation to such sales.

By chapter 820, p. 1824, of the Laws of 1866, it was further provided:

"Section 1. All deeds executed in pursuance of law by the treasurer and county judge of any county, upon any sale had in pursuance of the act, chapter two hundred and ninety-eight of the laws of eighteen hundred and fifty, entitled: An act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes in the counties where they were assessed, shall have the effect to vest in the grantee therein an absolute estate in fee simple to the real estate so sold, subject however, to all claims which the people of the state may have thereon for taxes, or for or by reason of any other lien or incumbrance, and shall be presumptive evidence that the said sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular, according to the provisions of the said act, and all laws directing or requiring the same, or in any manner relating thereto."

The contention of the appellant is that the act of 1850 contained no saving clause whatever as to the powers of the comptroller to execute conveyances for lands theretofore sold. We think the interpretation put upon the language of the repealing section of the act by the appellant is altogether too limited. The saving clause provides that the repeal "shall not in any manner affect any tax levied or assessed prior to the year 1849, nor any proceeding for the collection thereof by a sale of the lands taxed or otherwise, nor the rights of any person which may accrue by reason of any such sale or proceeding, nor any sale of lands for taxes which has heretofore been made, nor any rights or duties of any person growing out thereof." We apprehend that the right of a purchaser at a tax sale under the Revised Statutes to a deed at the expiration of the time of redemption was within this saving clause, and that after the act went into effect an individual purchaser could have compelled the execution of a deed by the comptroller. But the repealing section expressly excepts "that part of section 83, p. 657, of this act, relating to conveyances hereafter to be executed by the comptroller." The part of section 83 referred to provides that "all conveyances hereafter executed by the comptroller of lands sold by him for taxes, shall be presumptive evidence that the sale, and all proceedings prior thereto," were regular. This has reference to conveyances by the comptroller under the Revised Statutes, as no authority was given by the act of 1850 to the comptroller to execute conveyances of lands sold for taxes. Furthermore, section 81 provided that the conveyance to a purchaser of lands sold should vest in the grantee an absolute estate in fee simple; "subject, however, to all the claims which the people of this state may have thereon for taxes or other liens or incumbrances." The habendum clause in the deed to Post recognizes

this provision of the statute in this language: "To have and to hold the same, to the said party of the second part, his heirs and assigns, forever, subject to all claims which the people of said state have therein." The effect of such a conveyance under the tax law of 1850 was considered in the case of this plaintiff against the International Paper Company, 41 Misc. Rep. 357, 84 N. Y. Supp. 836, affirmed without opinion, 94 App. Div. 609, 87 N. Y. Supp. 1146, and 181 N. Y. 540, 73 N. E. 1131. The action was in ejectment, but the position of the parties as to title was the same. It was held that, as against the equitable title of the state, acquired by a tax sale in 1848 for taxes of 1844, a sale of the same land in 1852 under the tax law of 1850 for taxes assessed in 1845 was wholly without authority, and conferred upon the grantee no title whatever. It is sought to distinguish the case now before us from Wells v. Johnston, 55 App. Div. 484, 67 N. Y. Supp. 112; Id., 171 N. Y. 324, 63 N. E. 1095—the authority relied upon in the case of the International Paper Company. In the Johnston Case the taxes under which the plaintiff claimed were levied after the period for redemption on the former sale had expired, and the sale was not had until after a deed had been executed to the state on such former sale; whereas in this case the second tax was levied before the period for redemption expired, and sale was had and deed executed before the state became the owner of the land. For reasons appearing in the discussion already had, we are of the opinion that the same force and effect must be given to the equitable title acquired by the state under the tax sale as to the legal title derived from the subsequent conveyances by the comptroller.

The defendants not having acquired any title whatever in lot 4, as held in the case of the International Paper Company, they are not in a position to attack the plaintiff's title upon any of the other grounds urged in their behalf.

The appellant claims title to 230 acres of lot 19 under a conveyance from the comptroller to Lawrence J. Goodale upon a sale in 1877 for unpaid taxes levied and assessed in 1869. The respondents claim title to lot 19 under the tax sale of 1849 and the conveyance by the comptroller to the people in 1855, which title, on November 11, 1863, through various mesne conveyances, became vested in the Adirondack Company, a corporation organized under and pursuant to the General Railroad Law, chapter 140, p. 211, Laws 1850, and chapter 236, p. 429, Laws 1863, an act entitled "An act to encourage and facilitate the construction of a railroad along the valley of the upper Hudson into the wilderness in the upper part of the state, and the development of the resources thereof." Section 2, p. 430, of the act provided that said corporation, when so formed, might purchase, take, and hold lands in said wilderness, and that all of said lands should be free and exempt from all taxation until the 12th day of September, 1883. Section 5 provided that such exemption should cease unless the company should construct and put in operation certain specified portions of its road. Section 6, p. 431, provided that the evidence of the construction and operation of the railroad mentioned in the fifth section should be the affidavit of the president, vice president, or chief engineer of said corporation. Chapter 850, p. 2004, of the Laws of 1868, extended the

time for the construction of such railroad. The proofs, in accordance
with the statute, of the construction of such railroad were furnished,
and the referee finds that the Adirondack Company duly complied
with and performed the conditions imposed upon it by chapter 236, p.
429, Laws 1863, and the acts amendatory thereof and supplemental
thereto, upon which it was entitled to have its lands relieved from
taxation.

The grant of the franchise by the state to the Adirondack Company,
by which it was provided that the lands purchased by the corporation
should be free and exempt from all taxation until the 12th day of Sep-
tember, 1883, constituted an inviolable contract binding upon the state,
and had the effect of exempting the company from all taxation during
the period mentioned in the act. McGehee v. Mathis, 4 Wall. 143, 18
L. Ed. 314; Home of the Friendless v. Rouse, 8 Wall. 430, 19 L. Ed.
495; Washington University v. Rouse, 8 Wall. 439, 19 L. Ed. 498;
St. Anna's Asylum v. New Orleans, 105 U. S. 362, 26 L. Ed. 1128.
The lands of the company being exempt from taxation, title adversely
to the railroad company could not be acquired by a sale for unpaid
taxes levied and assessed during the period of exemption.

We do not think that the objections to the identity of the railroad
corporation, or to the proofs relative to the compliance with the pro-
visions of the act or the sufficiency thereof, are well taken.

Judgment affirmed, with costs. All concur.