## PICKELL v. CITY OF UTICA.

(Supreme Court, Appellate Division, Fourth Department.   January 7, 1914.)

TAXATION (§ 733*) — TAX LIENS — PRIORITY — COUNTY TAXES — CITY CERTIFI-
CATES—STATE OF NEW YORK—"PEOPLE OF THE STATE OF NEW YORK"—
"THE STATE."

    Laws 1902, c. 559, relating to the enforcement of taxes in Oneida county,
provides for the publication of notice of sale of lands for taxes, filing
proof of due publication, the time and manner of redemption, and declares
that no other or further or different notice of the expiration of the time
to redeem shall be required to be published, served on, or given to any
person whatever.  Section 9 declares that if real estate is sold for taxes,
and any portion thereof is not redeemed, the county treasurer shall exe-
cute to the purchaser a conveyance which shall vest in the grantee an ab-
solute estate in fee, free from all liens, claims, and incumbrances of every
name and nature, subject only to such claims as "the state of New York"
and county of Oneida may have thereon for taxes or other liens.  Section
10 provides that the treasurer's deed shall vest in the grantee an absolute
estate in fee subject to all claims that the state may have for taxes or
other liens or incumbrances.  Held, that the words "the state of New
York" and "the state" were not used as equivalent to the "people of the
state of New York" to designate the state in its sovereign capacity, in-
cluding municipal subdivisions, and that the city of Utica being author-
ized by its charter as amended by Laws 1901, c. 577, to redeem from
county taxes levied on land within the city on which the city also had a
tax lien, and no such redemption having been accomplished, a sale of the
land for subsequent county taxes freed the land from the lien of prior
city tax certificates.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1469; Dec. Dig.
§ 733.*

    For other definitions, see Words and Phrases, vol. 6, p. 5284.]

    Kruse, P. J., and Foote, J., dissenting.

Appeal from Special Term, Oneida County.

Suit by Joseph S. Pickell against the City of Utica.  From a judg-
ment for plaintiff, defendant appeals.  Affirmed.

The opinion of Crouch, J., at Special Term, is as follows:

This is an action in equity to remove a cloud upon title to real estate.

The real estate in question is a parcel of land in the city of Utica upon which
certain taxes and assessments were levied by the defendant city and which
upon default in the payment thereof was sold at public auction and struck off
to the city of Utica.  The city of Utica thus became the holder of a series of
tax certificates for taxes levied during the years 1899 to 1904, inclusive, ag-
gregating with penalties $1,364.

The said premises were thereafter sold for unpaid taxes assessed by the
county of Oneida for the years 1904, 1907, and 1908, and were struck off and
subsequently conveyed by county treasurer's deeds to one Jay A. Pease, the
purchaser, all of which deeds were duly recorded in the office of the clerk of
Oneida county.  The said Pease subsequently conveyed said premises to the
plaintiff.  The plaintiff also acquired deeds from the county treasurer of Oneida
county under sales for unpaid taxes of 1909 and 1910, both of which deeds
were duly recorded.

The plaintiff contends that the interest of the city of Utica in said property
under the city tax certificates above set forth was cut off by the county tax
sales, and the proceedings had thereafter culminating in the several tax deeds
under which he claims, and he asks judgment that a decree be entered direct-

---

ing defendant to surrender said certificates for cancellation and that they be declared no longer a lien against said property.

I am aware that it is the settled policy of the law to insure the collection of all taxes, and that the courts, wherever it is possible upon any theory to do so, will construe the statutes to accomplish that result. Upon the facts in this case, however, I am unable to find any construction which will give effect to the plain language of the statute and at the same time preserve the rights of the city of Utica under its several tax certificates. This unfortunate situation is not the result of any defect or inequality in the system of city and county taxation applicable to Utica, but rather to the lack of vigilance upon the part of the city in seasonably perfecting its title as required by the terms of its charter and in paying the county taxes within the time required by law.

The deeds under which plaintiff claims were given pursuant to chapter 559 of the Laws of 1902, which provides for the publication of notice of sale, the filing of proof of due publication, the time and manner of redemption, the publication of notice of redemption, and the filing of proof thereof, than which "no other, further or different notice of the expiration of the time to redeem shall be required to be published, served upon or given to any person whatever."

Section 9 then provides as follows: "If such real estate sold for taxes, or any portion thereof, be not redeemed, as herein provided, the county treasurer shall execute to the purchaser, his heirs or assigns, a conveyance of the real estate so sold, and unredeemed, which shall vest in the grantee an absolute estate in fee, free from all liens, claims and incumbrances of every name and nature whatsoever, subject only to such claims as the state of New York and county of Oneida may have thereon for taxes or other liens."

Section 10 also provides for the execution of a conveyance by the treasurer, and further provides that "every such conveyance shall vest in the grantee an absolute estate in fee simple, subject to all claims which the state may have thereon for taxes or other liens or incumbrances," etc.

The defendant claims that the phrases, "the state of New York" and "the state," used in the sections above quoted, refer to the state in its capacity as sovereign, as equivalent to "the people of the state of New York"; and maintains that the rule of law is well settled in this state that tax sales made by the sovereign, whether in its capacity as a state, county, or municipality, do not in any wise interfere with the other liens of the sovereign in either of those capacities. Wells v. Johnston, 55 App. Div. 484, 67 N. Y. Supp. 112, affirmed in 171 N. Y. 324, 63 N. E. 1095; People ex rel. Atkins v. City of Buffalo, 63 App. Div. 563, 68 N. Y. Supp. 409, 71 N. Y. Supp. 1145; City of Rochester v. Kapell, 86 App. Div. 224, 83 N. Y. Supp. 640, affirmed in 177 N. Y. 533, 69 N. E. 1121; Bell v. City of New York, 66 App. Div. 578, 73 N. Y. Supp. 298; Tifft v. City of Buffalo, 9 N. Y. Supp. 920; Raquette Falls L. Co. v. Int. Paper Co., 41 Misc. Rep. 357, 84 N. Y. Supp. 836, affirmed in 94 App. Div. 609, 87 N. Y. Supp. 1146, and 181 N. Y. 540, 73 N. E. 1131; Raquette Falls L. Co. v. Hoyt, 109 App. Div. 119, 95 N. Y. Supp. 1029, affirmed in 187 N. Y. 550, 80 N. E. 1119.

Without discussing these authorities in detail, it may be said that they do not in my opinion establish the broad doctrine for which defendant contends. They were decided under the particular language of other statutes and under other and different facts. If there is any general rule to be drawn from them, it is in substance that all tax liens will be preserved unless there appears on the face of the statute a clear intent to the contrary. That I think is the case here.

While the phrase, "the people of the state of New York," is the usual and accepted one to designate the sovereign, and the phrase "the state of New York" usually refers to the political subdivision or entity, I apprehend they might under certain circumstances be used interchangeably; but when the saving clause of the statute, as here, exempts "such claims as the state of New York and the county of Oneida may have thereon for taxes," there can be no doubt that reference is specifically made to state taxes and county taxes as those terms are ordinarily used and understood. If that be so, there can be as little doubt that the omission to include the city of Utica in the saving clause was intentional and significant. This is not, therefore, a case to which the doctrine of sovereignty applies (conceding that the cases have established such a

doctrine) because the sovereign itself, as embodied in the Legislature, has waived its rights so far as the city of Utica is concerned. And this it has the power to do. Wells v. Johnston, 55 App. Div. at page 488, 67 N. Y. Supp. 112.

This construction of the County Tax Law in no wise affects the coherency of the system of city and county taxation in Utica.

Under the Charter of that city, sections 54, 55, 56, and 57, as amended by chapter 577 of the Laws of 1901, it is the duty of the city treasurer on city tax sales, where there are no other bids, to bid in all parcels, taking a tax certificate therefor, and thereafter "to seasonably procure from the county clerk the necessary searches to enable the city to perfect its title," and, if not redeemed to take a conveyance thereof, "which conveyance shall vest in the grantee an absolute estate in fee simple subject to all claims which the city, county, or state may have thereon for taxes or any other liens or incumbrances."

Property so acquired and held by the city is subject to county taxation. Clarke v. Sprague, 113 App. Div. 645, 99 N. Y. Supp. 304. Hence, if the city had perfected its title to the premises in question as contemplated by law, it would, nevertheless, have been compelled to pay the county taxes, default in the payment of which resulted in the deeds under which plaintiff claims. If the city had not done so, its right in the property would have been cut off by the resulting county tax sales. I think that the city would not have been without power under those circumstances to protect its interest in the property and to raise money by taxation for that purpose. See section 35 of the Charter of the City of Utica, giving common council "the care, management and control of the property of the city and its finances"; also, section 47, subdivision 1, providing for a contingent fund; also, section 48, providing that the common council shall impose upon persons and property "amount of any other tax or tax for extraordinary purposes, which may be required or authorized by law."

If, then, the city, upon peril of being cut off, would have been obliged to pay the county taxes even if it had done as directed by the law and perfected its title, is it to be said that it was in better case because it neglected to comply with the law and relied upon its inchoate title under its tax certificate? I think not.

Whether, having neglected to perfect its title under its own sales, the city had the right or power to redeem from subsequent county tax sales, and thereby preserve its vested rights to receive tax deeds, is not absolutely clear. I am inclined to think it did have such right and power under the sections of the charter above referred to and after 1908, under the provisions of article 1, § 3, subd. 5, of the uniform charter of second-class cities.

In short, the scheme of city and county taxation in Utica seems to have contemplated the payment of county taxes by the city in all cases where individuals interested in the property defaulted in payment, leaving the city to recoup itself out of the property. That such was the legislative intent is further evidenced by chapter 287 of the Laws of 1913, by which it was provided, in substance, that hereafter the city shall pay the county its portion of the county taxes and afterward collect the same along with its own taxes.

It seems to me, therefore, that it was the duty of the city and within its power to preserve its interests in the property in question by the payment of the county taxes within the statutory period, and, having failed to do that, its rights were extinguished.

The other issues raised by the answer of defendant are decided without discussion against the defendant.

The decree sought is granted, with costs, and findings may be prepared accordingly.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Seward A. Miller, of Utica, for appellant.

Martin & Jones (Richard R. Martin, of Utica, of counsel), for respondent.

PER CURIAM. Judgment affirmed with costs, upon the opinion of Crouch, J., delivered at Special Term.

FOOTE, J. (dissenting). The judgment adjudged that plaintiff had become the sole owner of a certain parcel of land in the city of Utica, and that the same is free from any lien thereon in favor of defendant to secure the payment of certain city taxes levied thereon and certain city tax sale certificates issued upon the sale of said premises for city taxes, and declaring said city tax certificates null and void and directing them to be surrendered up and canceled.

The city of Utica is the holder of a series of tax certificates for taxes levied upon the premises in question located in that city during the years 1899 to 1904, inclusive, aggregating, with the penalties, $1,364. The same premises were thereafter sold for unpaid taxes assessed by the county of Oneida for the years 1904, 1907, and 1908, and were struck off and subsequently conveyed by county treasurer's deeds to one Jay A. Pease, the purchaser, all of which deeds were duly recorded in the Oneida county clerk's office. Pease subsequently conveyed the premises to plaintiff. Plaintiff also received deeds from the treasurer of Oneida county under sales for unpaid taxes of the years 1909 and 1910, and these deeds were duly recorded.

This action is brought in equity to have it adjudged that the tax certificates held by the defendant the city of Utica upon sales for city taxes are invalid as against the taxes subsequently levied upon the same premises by the county of Oneida and the title thereunder acquired by plaintiff by deeds from the county treasurer, and to have the said city tax certificates surrendered up and canceled and thereby removed as a cloud upon plaintiff's title.

The decision of this court in the case of City of Rochester v. Kapell, 86 App. Div. 224, 83 N. Y. Supp. 640, affirmed 177 N. Y. 533, 69 N. E. 1121, on the opinion below, applies in principle to this case, and we think requires a reversal of the judgment appealed from and the dismissal of plaintiff's complaint.

In that case the city of Rochester held a tax certificate as the purchaser upon a tax sale of certain premises in the city of Rochester for a city tax levied in the year 1899, and the action was brought to foreclose the lien of the city by virtue of this tax sale certificate and thereby to perfect the city's title to the lands. The defendant Kapell, who was made a party, was the holder of a tax sale certificate issued by the county treasurer of the county of Monroe for a tax sale made on August 19, 1902, for a state and county tax levied upon the same premises in the year 1901. The decree from which defendant Kapell appealed adjudged the lien of the city of Rochester, by virtue of its tax certificates, to be prior and superior to that of defendant Kapell by virtue of his county tax certificate, and directed that upon the sale of the premises the amount due upon the city tax sale certificates should be first paid from the proceeds of the sale, and that the premises should be sold free and clear of the lien of the defendant Kapell under his county tax certificates, and that he be barred and foreclosed of all

right, title, or equity of redemption. By the statute under which the county tax sales were made, being chapter 107 of the Laws of 1884, it was provided that, if after the sale there was no redemption from the sale within two years, the county treasurer should then execute to the purchaser a conveyance of the property, and the statute further provided that this conveyance, "when perfected in the manner hereinafter provided, shall vest in the grantee an absolute estate in fee, subject, however, to all the claims which the people of this state may have thereon for taxes or other liens or incumbrances." It was the contention of the defendant Kapell that this quoted provision of the statute entitled him, in case there was no redemption from his tax sale certificates, to a deed which would cut off and extinguish the lien of the city taxes and tax certificates issued thereunder, prior in point of time to the county tax and tax certificates issued thereunder. This contention was disposed of in the opinion of Mr. Justice Williams for a unanimous court, adopted also by the Court of Appeals, as follows:

"The question is as to the effect of the deed which he (defendant Kapell) will be entitled to as purchaser under the county sale. The tax for the nonpayment of which the sale to appellant was made included a state tax, to be collected by the county, and it is claimed that the only tax liens which are preserved, under the language of this section, are pure state taxes. This we apprehend is too narrow a construction of the language of the section, viz., 'all the claims which the people of this state may have thereon for taxes,' etc. The source of all power to tax within the state, whether by the state, the city, the town, or the county, is the Legislature. The Legislature has the right to provide for the protection of all such taxes. The policy of the law is to insure the collection of all taxes. We must assume that the Legislature intended no conflict between the systems of taxation provided by it for the several political divisions above referred to. It could not have intended that a sale for taxes by one division should cut off and nullify sales made by other divisions for their taxes. The more reasonable construction of this section is one that preserves all liens for taxes, whether state, county, town, or city. All these political divisions represent the people of the state, and their taxes are all claims of the people of the state. This construction in effect results in the principle that no individual can secure a perfect title to real property, purchased upon tax sales, without paying all taxes thereon, imposed by any political subdivision of the state. This is a reasonable and salutary doctrine."

With the general rule in mind enunciated in this opinion, which was by no means a new rule, we have to examine the statutes applicable to the case at bar to determine whether they require a similar construction for the same reasons. The city taxes in question here are prior in point of time to the county taxes.

Section 47 of the Revised Charter of the City of Utica, being chapter 18 of the Laws of 1862, as amended by chapter 577 of the Laws of 1901, provides that the city taxes assessed as therein provided "upon or in respect to any real estate shall be liens thereon until such taxes are paid." There is a similar provision in the statute in reference to the lien of assessments for local improvements. The city charter also requires the city treasurer to bid in for the city property sold upon city tax sales, where there is no other bidder, to an amount equal to the tax, and also provides a method of perfecting the city's title in such cases.

County tax sales in Oneida county are or were governed by the provisions of chapter 559 of the Laws of 1902. Section 9 of that act provides:

"If such real estate sold for taxes, or any portion thereof, be not redeemed, as herein provided, the county treasurer shall execute to the purchaser, his heirs or assigns, a conveyance of the real estate so sold, and unredeemed, which shall vest in the grantee an absolute estate in fee, free from all liens, claims and incumbrances of every name and nature whatsoever subject only to such claims as the state of New York and county of Oneida may have thereon for taxes or other liens."

Section 10, which provides for the form of conveyance to be made, also contains this provision:

"Every such conveyance shall vest in the grantee an absolute estate in fee simple, subject to all claims which the state may have thereon for taxes or other liens or encumbrances, and which shall be presumptive evidence that the sale and all proceedings prior thereto * * * were regular. * * * After two years from the date of such conveyance such presumption shall be conclusive, the sale and conveyance thereof shall become absolute, and the occupant and all others interested in the land be forever barred from all liens upon, claims against, interest in or right or title thereto."

We are of opinion that these provisions of the county tax law should, for their true construction, be read with the charter and statutes relating to city taxes of the city of Utica, so far as the two sets of statutes provide for the assessment and collection of taxes on real property in the city of Utica, and that, when read together, the county tax law does not in express terms or by necessary implication provide for the destruction of prior liens for city taxes upon the sale and conveyance of the same lands for subsequent county taxes. By the city charter, the city taxes are to remain liens until the taxes are paid. In view of the policy of the law to insure collection of all taxes and the assumption which we must make that the Legislature intended no conflict between the systems of taxation provided by it for the several political divisions in Oneida county, we think the general language of the county tax law, although it expressly excepts from the effect of the conveyance "such claims as the state of New York and the county of Oneida may have thereon for taxes or other liens," does not indicate a legislative intent that prior city tax liens should be extinguished by such conveyance, and the provisions on the same subject in section 10 serve to confirm this view. In view of the general policy of the Legislature in such matters and the decisions of the courts on the subject, we think a statute to have that effect should provide in express terms that prior city tax liens should be extinguished.

Our conclusion is that the judgment appealed from should be reversed, with costs, and judgment directed upon the findings below dismissing the plaintiff's complaint, with costs.

KRUSE, P. J., concurring.