232

PERELES, Respondent, vs. CITY OF MILWAUKEE, imp., Appellant.

*November 6—December 5, 1933.*

For the appellant there was a brief by *Max Raskin,* city attorney, and *H. C. Hirschboeck,* assistant city attorney, and oral argument by *Mr. Hirschboeck* and *Mr. William F. Quick,* assistant city attorney.

*Charles L. Goldberg* of Milwaukee, for the respondent.

FRITZ, J.   In this action to quiet title to land, plaintiff bases his title on county tax deeds issued to him in 1931 and 1932 on delinquent county tax certificates which were sold to him at county tax sales held on June 15, 1927, and June 13, 1928.   He claims that he is entitled to judgment, declaring that his title and rights by virtue of those deeds are superior to liens claimed by the city of Milwaukee for delinquent city taxes for the year 1917, and the years 1921 to 1927, inclusive, and tax-sale certificates issued to it in the month of February of the year 1919, and the years 1922 to 1928, inclusive, on sales for those delinquent city taxes.   In its answer the city denied that the delinquent city taxes have ceased to be liens on the land and that plaintiff's rights are superior to such city tax liens; and alleged that

such city tax liens "are and continue to be taxes in the process of collection despite the fact that for want of bids at the tax sales the premises were struck off to the city pursuant to the provisions of section 29 of chapter XVIII of the city charter and tax certificates therefor were issued to the city in its corporate name;" and that "the estates acquired by plaintiff under the several county tax deeds set forth in the complaint are subject to all the unpaid city taxes represented by said city-owned tax-sale certificates."

By way of counterclaim the city sought by foreclosure of its liens to recover from the plaintiff and the defendants Meyer, who were the former owners of the land, the amount due on the city's tax liens represented by its tax-sale certificates. In point of time plaintiff's title is based on a county tax sale, tax certificates and tax deeds which are subsequent to the city's sales for city taxes and its tax certificates. Consequently, plaintiff's rights are superior under the settled rule that "a valid sale and conveyance of land for taxes under a junior assessment cuts off all prior titles and liens." *Knox v. Leidgen,* 23 Wis. 292; *Jarvis v. Peck,* 19 Wis. 74; *Truesdell v. Rhodes,* 26 Wis. 215; *Foster v. Sawyer County,* 197 Wis. 218, 221 N. W. 768. However, it is the contention of the city that the inverse priority rule of tax liens, that the last in time is first in right, does not apply while one of the conflicting liens is held by the state or a governmental unit. In support of that contention counsel relies in part upon statements made in opinions filed in *Smith v. Specht,* 58 N. J. Eq. 47, 42 Atl. 599; *Gamet's Estate v. Lindner,* 159 La. 658, 106 South. 22; *Pickell v. Utica,* 161 App. Div. 1, 146 N. Y. Supp. 31; and several Pennsylvania cases cited in a note to sec. 1242 of Cooley on Taxation (4th ed.). All of those statements were made in relation to peculiar statutory provisions which differ materially from the statutes which are applicable in this state.

It is therefore of greater significance that, under the statutes of this state, this court, in *Foster v. Sawyer County, supra,* considered that rule of the inverse priority of tax liens equally applicable to a governmental unit, viz., a county, in the following statement:

"But when the county holds tax certificates on lands having been sold for taxes, it is necessary for it to purchase the certificates of subsequent sales in order to protect its certificates already held, for a tax deed on later certificates cuts off the lien of the prior certificates. Therefore, for the protection of the county the statutes properly command that the county become the exclusive purchaser of subsequent tax certificates where at the time it holds prior certificates."

In support of its contention that its tax liens have not been cut off by the junior tax-sale certificates and deeds upon which plaintiff's rights are based, the city relies on a provision in sec. 75.14 (1), Stats., which provides that a county tax deed shall vest in the grantee an absolute estate in fee simple "subject, however, to all unpaid taxes and charges which are a lien thereon and to redemption as provided in this chapter." The city claims that the words "unpaid taxes" in that provision are applicable to prior as well as to subsequent taxes, and that prior city taxes are to be considered as "unpaid" within the meaning of that provision even after property has been struck off to the city and a tax certificate therefor has been issued to the city under sec. 74.43, Stats., and sec. 29, ch. XVIII, of the city charter. In each of the sections last cited it is provided that if, at any sale of property for city taxes or assessments, no bids are made for any such property, "the same shall be struck off to the city, and thereupon the city shall receive in its corporate name a certificate of the sale thereof and shall be vested with the same rights as other purchasers are." Under that provision, upon the striking off of the land to the city and its receiving a tax

certificate thereof, the tax for which the property was sold and struck off is no longer a tax which is to be paid. After that, there remains in the owner merely the right of redemption (under sec. 75.01, Stats.) from the lien of the tax certificate. As this court said in *Lindsay v. Fay,* 28 Wis. 177:

". . . .The conclusion seems inevitable, that a redemption of the land is not a payment of the tax. . . . There seems to be a wide difference between the payment of the tax by the owner of the land, and the redemption of the land by him after it has been sold for non-payment of the taxes assessed upon it. There is really no tax to be paid when land is thus redeemed. That has been canceled by the sale."

That has been considered the result even if the property is acquired by the state or a municipality on such tax sale.

"The purchase by the state of property sold for delinquent taxes will extinguish the debt and all liens arising from those taxes." Black, Law of Tax Titles (2d ed.) § 301.

"When the body politic by which the tax was levied bids in the land, it is not obliged to go through the useless form of paying the price with one hand and receiving it with the other, but on the consummation of the sale the payment is in legal effect made." 26 Ruling Case Law, p. 417, § 375.

Consequently, when, prior to the tax sales to plaintiff and the issuance to him by the county of certificates and deeds pursuant to those sales, the property in suit was struck off to the city and tax certificates were received by it for city taxes, those city taxes no longer constituted unpaid taxes and therefore plaintiff's title was not subject thereto under the provision in sec. 75.14 (1), Stats.

Furthermore, sec. 74.43, Stats., and sec. 29, art. XVIII, of the city charter, which authorize the city to acquire tax certificates, provide that upon the city's receiving a certificate of sale on property struck off to the city for city taxes, the city "shall be vested with the same rights as other purchasers are." Those words "as other purchasers" indicate that the

city is deemed, in respect to status, to be a purchaser, and to have acquired the certificate as any bidder who acquires a certificate by purchase; and these provisions in their entirety declare that the city's rights are the same as the rights of other purchasers who acquire certificates by a successful bid. Furthermore, that the city's rights are not superior to those of any other purchaser, and that it is therefore necessary for the city, like any other purchaser who holds senior certificates, to protect its senior certificates from being subordinated to the liens which would arise under later county tax sales, is convincingly evidenced by the provision in sec. 74.43, Stats., that the city council "to protect" the city's interest under a tax certificate may bid in and become the exclusive purchaser of such lands at any sale by the county treasurer.  Such authority is expressly conferred by the following provision in that section:

"Whenever such city shall hold any certificate of sale for any land sold for the non-payment of city taxes, the common council of such city, *to protect* such interest, may authorize and direct the city treasurer to bid in and to become exclusive purchaser in the corporate name of such city of such lands at any sale of the same by the county treasurer for the county and state taxes, and such city shall be vested with the same rights as are other purchasers."

Why, unless necessary to avoid the subordination of its lien under its prior tax certificates, was the city expressly authorized by that statute to "protect such interest" by bidding in such land at the later sales for taxes by the county treasurer?  Manifestly, if liens acquired by other purchasers at such subsequent sales afford no priority right to such purchasers under the inverse priority rule of tax liens, there would be no occasion for the city to protect its interests by purchasing itself at the subsequent sales.  In that connection, it is also significant that that inverse priority rule of tax liens is expressly recognized by the provision in sec. 33 of

ch. XVIII of the city's charter, that, if the purchaser who is first in time at tax sales in the same year "shall not redeem, the right of the last purchaser shall be held paramount in case of the execution of any tax deed therefor." That provision and the rule which is therein stated and sanctioned, without any exception in favor of the city when it receives a certificate at a senior tax sale, is certainly as applicable to the city, which has but "the same rights as other purchasers," as it is to such other purchasers. In addition, if the liens under senior tax certificates when held by the city were not subordinated to the liens under junior tax-sale certificates acquired by private purchasers, what occasion was there for enacting ch. 177, Laws of 1931 (sec. 75.14 (3), Stats.), which since its enactment requires an applicant for a county tax deed to produce proof, before the issuance of such a deed to him, that "all outstanding, unpaid and unredeemed delinquent general or special taxes theretofore assessed and levied against such lands or parts of lands by any city located in such county and by law authorized to purchase its own delinquent taxes or assessments at public auction have been purchased by and the tax certificates therefor assigned to the applicant for such tax deed or purchased by and assigned to some other person?" There was certainly no need for that enactment, unless the inverse priority rule of tax liens was applicable to senior tax certificates acquired by the city. Manifestly, it was enacted to thereafter avoid, for the benefit of the city, the consequences of the rule of inverse priority of tax liens, which was equally applicable to it, by requiring proof before an applicant for a tax deed under a junior tax lien could obtain such deed, that all delinquent city taxes theretofore levied against the land have been purchased by and the certificates therefor assigned to the applicant for such tax deed or some other person.

However, sec. 75.14 (3), Stats., was not in effect until after the plaintiff acquired the tax certificates and deeds upon

which he bases his title to the land in suit. As he acquired those tax certificates and deeds pursuant to tax sales which were held after the sales which resulted in the city's receiving the tax certificates upon which it relies, his rights as the last purchaser must be held paramount. He, as well as the city, and the tax sales, certificates and deeds involved herein, come squarely within the provisions of sec. 33 of ch. XVIII of the city charter, that—

"When there shall be a sale by the county treasurer and by the city treasurer, of any piece or parcel of land for taxes, in the same year, the purchaser of such piece or parcel, who may be first in point of time, may redeem the same from the subsequent purchaser; and in case he shall not redeem, the right of the last purchaser shall be held paramount in case of the execution of any tax deed therefor."

It follows that, as the city's liens by virtue of its senior tax certificates are subordinate to plaintiff's title and do not entitle it to a tax deed which would constitute a bar or be paramount to plaintiff's title, they afford no basis for the foreclosure thereof as against the plaintiff; and the ownership thereof by the city constitutes no defense to the plaintiff's cause of action to quiet his title as to those liens. In view of the foregoing conclusions, it is unnecessary to consider other questions, which are discussed in the briefs, as to the period of limitation which is applicable to the tax certificates held by the city.

*By the Court.*—Order affirmed.