(108 App. Div. 67.)

RAQUETTE FALLS LAND CO. v. BUYCE.

(Supreme Court, Appellate Division, Third Department. October 24, 1905.)

PUBLIC LANDS—LAND OF STATES—DISPOSAL—DEEDS.

> Rev. St. (3d Ed.) pt. 1, tit. 7, c. 11, § 13, required the electors of each town having gospel and school lands at their annual town meetings to elect trustees to take charge of the lands, and title 4, c. 15, § 3, gave such trustees power to sell the lands "with the advice and consent of the inhabitants of the town in town meeting assembled." Laws 1846, p. 210, c. 186, abolished the office of such trustees and conferred their powers on the town superintendent of common schools. Held, that a deed to a gospel and school lot, reciting that it was between H., town superintendent of common schools of the town, of the first part, and U., grantee, of the second part, which failed to refer to any statutory authority for its execution, and did not contain any recitals that it was issued with the advice and consent of the inhabitants of the town in town meeting assembled, did not convey the state's title to the land.

Appeal from Trial Term, Hamilton County.

Action by the Raquette Falls Land Company against George Buyce. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Griffen & Ostrander (George N. Ostrander, of counsel), for appellant.

Lee S. Anibal (Andrew J. Nellis, of counsel), for respondent.

CHASE, J.   This action is brought to recover damages for the alleged cutting of certain timber on gospel, school and literature lots 2, 6, 7, and 8, township 1, Hamilton county; also to restrain and enjoin the defendant from removing the timber cut by him, and from further cutting timber thereon.   It appears that the defendant did cut certain timber on gospel and school lot 8 in said township.   Said lot is wild forest land, and the rights of the parties therein depend upon their respective titles by deed.   The plaintiff claims title to said lot under a deed dated the 15th day of July, 1856, given in the name of the people of the state of New York to the Sacketts Harbor & Saratoga Railroad Company, which deed bears the great seal of the state of New York and is signed by the Governor of said state.   Special authority for such deed is claimed by virtue of chapter 207, p. 321, Laws 1848. The defendant claims title to said lot under a deed dated December 23, 1850, between "Lyman Holmes, town superintendent of common schools of the town of Gilman, in the county of Hamilton and state of New York, of the first part, and Lemuel B. Underwood,  *  *  * of the second part."   When the deed by said Holmes was offered in evidence, the plaintiff objected thereto; among other things:

"That the provisions of the statute clothing the officials with power to sell have not been shown here.   It is incumbent upon the defendant to show a compliance with the provisions of the statute authorizing the sale of the lands by the superintendent of schools."

The objections were overruled, and the defendant excepted, and the deed was received in evidence.   Plaintiff's complaint was dismissed. The trial court held that by said deed of Holmes the title of the people of the state to said lot was divested prior to the execution of said deed by the Governor as hereinbefore stated.   If the court was in error in receiving said deed in evidence and in holding that without other evidence it established that the title of the people of the state to said lot was by it divested, then we think that, without now considering the other questions involved, we should direct a new trial of the action.

The title to the gospel, school, and literature lands remains in the people of the state, notwithstanding such designation.   The lots in question are part of lands marked by the surveyor general as "gospel and schools," and "for promoting literature," pursuant to chapter 67, p. 334, Laws 1786.   It was provided by section 13, c. 11, tit. 7, pt. 1, of the Revised Statutes (third edition), that:

"The electors of each town in this state having land assigned to it for the support of the gospel and schools or for the support of either shall at their annual town meetings elect three persons being electors of such town, as trustees to take charge of such lands."

Such trustees, besides the ordinary powers of a corporation, were given power, and it was made their duty, among other things, to sell

the gospel and school lots "with the advice and consent of the inhabitants of the town in town meeting assembled for such price and upon such terms of credit as shall appear to them most advantageous." Rev. St. (3d Ed.) pt. 1, tit. 4, c. 15, § 3.   By chapter 186, p. 210, of the Laws of 1846 it was provided:

"The office of trustees of the gospel and school lots in the several towns in this state, is hereby abolished, and the powers and duties now by law conferred and imposed upon said trustees shall hereafter be exercised by the town superintendent of common schools."

The statutes quoted were in force at the time of the execution of the deed under which the defendant claims title to the lot on which the timber was cut.   The gospel and school lots were reserved for the benefit of the towns, and the authority of the school superintendent to sell such lots was made dependent upon the advice and consent of the inhabitants of the town in town meeting assembled.

In De Lancey v. Piepgras, 138 N. Y. 26, 42, 33 N. E. 822, the court, in considering a deed given by the Comptroller, which recited a compliance with all the provisions of law relating thereto and which was regular and valid upon its face, say:

"The rule is firmly established that the issuing of a patent by the officers of a state who have authority to issue it, upon compliance with certain conditions is always presumptive evidence of itself that the previous proceedings have been regular and that all the prescribed preliminary steps have been taken; and the recitals in it are evidence against one who claims under the original owner by a subsequent conveyance, or does not pretend to claim under him at all, and the grant cannot be impeached collaterally."

In Sheets v. Selden, 68 U. S. 177, 17 L. Ed. 822, the court say:

"It may be stated generally that when a deed is executed or a contract is made on behalf of a state by a public officer duly authorized, and this fact appears upon the face of the instrument, it is the deed or contract of the state, notwithstanding that the officer may be described as one of the parties and may have affixed his individual name and seal."

The deed from Holmes is a warranty deed in the ordinary form then used by individuals.   It is not in form by, and it is not signed as, town superintendent of common schools, and there is nothing to show that the words "town superintendent of common schools of the town of Gilman" are not merely descriptive of the person of the grantor. It does not purport to be a patent conveying the title of the people of the state of New York.   It does not refer to any claimed statutory or other authority for the execution and delivery of the deed; neither does it contain any recitals relating to the advice and consent of the inhabitants of the town of Gilman in town meeting assembled, or to any other matter.   There is nothing in the deed, therefore, upon which to base a presumption that the original title of the people of the state of New York was conveyed thereby.   The evidence before the court was not sufficient to justify the conclusion that the original and ultimate property of the people of the state of New York in the lot in question had been conveyed prior to the execution of the deed under which the plaintiff claims.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.   All concur.