PEOPLE v. LA PRAIRIE et al.   (No. 121-31.)

(Supreme Court, Appellate Division, Third Department. July 1, 1915.)

1. PUBLIC LANDS ⬥163—LANDS OF STATES—DISPOSAL.

Laws 1786, c. 67, provided for the sale of unappropriated state lands, and directed that on maps for such sale there should be laid out in each township a lot marked "Gospel and School" and another for "Promoting Literature," and provided that the lots so marked should not be sold, but the lot marked "Gospel and School" should be reserved to promote the gospel and the public schools of the township, and the lot marked for "Promoting Literature" reserved to the people of the state, to be applied by the Legislature to the indicated end. Laws 1893, c. 711, § 13, authorized the comptroller to advertise lists of the wild, vacant, and forest

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lands to which the state held title·by tax sales or otherwise, and declared
that thereafter the land should be deemed to be in the actual possession
of the comptroller, which should continue until he had been dispossessed
by the judgment of a court of competent jurisdiction. A town designated
two lots for "Gospel and School" and for "Promoting Literature," and
thereafter the comptroller advertised them pursuant to Laws 1893, c. 711.
They were four times conveyed by the state comptroller by tax deeds, and
defendants in ejectment, squatters on such lands, urged that the desig-
nation of the lot for gospel and school purposes divested the state of its
title thereto, and that the town became the owner, and that by reason of
the tax sales the plaintiff's title to both lots failed. *Held*, that the desig-
nation of the gospel and school lot and the literature lot as such, did not
divest the state of title, or give the town any title, which, by statute, could
only be done by the local authorities under vote of a town meeting, while
the tax sales were inoperative to divest the state's title, since such lots
could not be taxed while remaining the property of the state.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 460–465;
Dec. Dig. ☞163.]

2. PUBLIC LANDS ☞163—LANDS OF STATE—DISPOSAL.

The court could not assume, to defeat the state, from the mere fact
that the lots were taxed, in the absence of other proof, that such lots
were sold by the town under vote of a town meeting, as provided by stat-
ute.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 460–465;
Dec. Dig. ☞163.]

3. EJECTMENT ☞23—DEFECT IN PLAINTIFF'S TITLE.

A defendant in ejectment, without title, may not defeat the legal title
of a plaintiff legally in possession by urging a mere defect in such title,
without connecting herself with that or any other title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 81–93; Dec.
Dig. ☞23.]

Appeal from Trial and Special Term, Hamilton County.

Action by the People against Henry La Prairie and wife and others.
Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 162 App. Div. 920, 146 N. Y. Supp. 1105.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD,
and WOODWARD, JJ.

George N. Ostrander, of Albany, for appellants.

The Attorney General (John O. Bates, of Albany, of counsel), for
respondent.

JOHN M. KELLOGG, J. The property recovered is the "gospel
and school lot" and the "literature lot," containing about 1,980 acres,
in township 19, Totten & Crossfield's Purchase, in Hamilton county.
The defendants relied upon adverse possession, but abandoned that
claim upon the trial, and defended the action upon the theory that they
were squatters, or mere possessers of the land. They did not claim
title in themselves, nor connect themselves with the title, but sought
to defeat the plaintiff's claim upon the ground that plaintiff's title was
defective.

[1] Chapter 67 of the Laws of 1786 provided for the sale of unap-
propriated state lands, and directed that upon the maps for such sale

there should be laid out in each township a lot marked "Gospel and School," and another for "Promoting Literature," and continued:

"Which lots shall be as nearly central in every township as may be, and the lots so marked shall not be sold, but the lot marked 'gospel and school' shall be reserved for, and applied to, promoting the gospel and a public school or schools of such township; and the lot marked 'for promoting literature' shall be reserved to the people of this state, to be hereafter applied by the Legislature for promoting literature in this state."

These lots were accordingly designated on said maps. This act in no manner affected the title of the state to the lots marked for promoting literature, nor of the other lot until the town leased or conveyed them in the manner provided for by law. July 15, 1856, the people patented these lands, with a large acreage of other lands in the vicinity, to the Sackett's Harbor & Saratoga Railway Company, the title to which, however, came back to the people December 19, 1891. The railroad title having returned to the people, they occupy the same position with reference to the land as though the patent had never been made. There is no record in the secretary of state's office of any other grant of these lands.

Section 13 of chapter 711 of the Laws of 1893 authorized the comptroller to advertise a list of wild, vacant, and forest lands to which the state holds title from tax sales or otherwise, and declared that after such advertisement was completed the possession of such lands—

"shall be deemed to be in the actual possession of the comptroller, and such possession shall be deemed to continue until he has been dispossessed by the judgment of a court of competent jurisdiction."

The defendant Addie La Prairie having acquired, August 6, 1897, an assignment of the interest of one Wilber, who was formerly in possession of these lands as a squatter, succeeds to no greater rights than he had. The conveyance was a quitclaim of—

"all the rights, title and interest in and to the cottage and all buildings and improvements and rights of possession of the property at what is known as Tyrell Pond, in the town of Indian Lake, Hamilton county, being the same premises occupied by B. W. Wilber at such pond for about eight years prior to his death in 1896."

The consideration was $150. The conveyance undoubtedly was intended to cover the cottages and improvements, and not the land itself. The people, having held the title to the literature lot, are deemed to have been in possession of it pursuant to the notice, and the defendant has established no claim to it as against the people. The title to the gospel and school lot is substantially the same. It appears that both lots, or some parts of them under various descriptions, were conveyed by the state comptroller by tax deed in May, 1828, to Peter Smith; August 20, 1840, to Cornelius Cochran; March 4, 1842, to Garrett Smith; and August 1, 1845, to Garrett Smith. The appellants urge that the designation of a lot for gospel and school purposes divested the state of its title thereto, and the town became the owner, and also that by reason of the several tax sales the plaintiff's title to both lots fails.

Designating these lots upon the map as a gospel and school lot and a literature lot did not divest the state of title, nor give the town any

title to the land. Raquette Falls Land Co. v. Buyce, 108 App. Div. 67, 95 N. Y. Supp. '381. The designated town authorities had the right to lease the gospel and school lot, or upon a vote of the inhabitants of the town at town meeting could sell and convey it, the proceeds therefrom creating a fund to take its place, the fund to be invested and reinvested in unincumbered real property worth double the amount loaned. R. S. pt. 1, c. 15, tit. 4 (1 R. S. 1829, p. 497). We need not refer to the later statutes relating to gospel and school land. The title of the state could not be divested by the local authorities, except by vote of a town meeting, and the proceeds of the sale would be a permanent fund, invested for school purposes in the manner indicated. There is no record of the town showing that any such sale was ever made, or that any proceeds from such sale were ever invested. Clearly there was no authority for selling these lands for the payment of taxes, or of taxing them while they remained the property of the state, or remained gospel and school or literature lots, for the use of the town or state for such purposes. Wells v. Johnston, 171 N. Y. 324, 63 N. E. 1095; Raquette Falls Land Co. v. International Paper Co., 41 Misc. Rep. 357, 84 N. Y. Supp. 836, affirmed 181 N. Y. 541, 73 N. E. 1131.

[2] It is suggested that the lots having been taxed is some evidence that they were sold by the town; but the fact that the records of the town show no sale or investment of proceeds is evidence to the contrary. We cannot, for the purpose of defeating the plaintiff, assume, in the absence of all proof, that the gospel and school lot was sold in the manner permitted by law.

[3] The state having a clear record title of the property, and the defendants having the mere naked possession of it, under section 13 of chapter 711 of the Laws of 1893, the state must be considered as having been in the legal possession of the lots since the publication of the notice, and the defendant by virtue of her naked possession is seeking to defeat the legal title of the party legally in possession by urging that there is a defect in the title, without connecting herself with that or any other title. The court properly ruled that upon the facts shown the defendant could not rely upon her alleged defense and that the plaintiff was entitled to possession.

The judgment is therefore affirmed, with costs.