172 PEOPLE v. BALDWIN.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v.
GEORGE BALDWIN and JENNIE BALDWIN, Defendants.

(Supreme Court, Hamilton Special Term, September, 1920.)

Ejectment — lands within forest preserve — no title by adverse
possession as against state — Code Civ. Pro. § 362.

> In an action of ejectment by the state to recover lands
> acquired by virtue of a comptroller's tax deed dated February
> 18, 1851, and recorded June 20, 1911, it appeared that the
> said lands were included within the forest preserve by the
> statute (Laws of 1885, chap. 283), which provided that the
> lands of the forest preserve should be forever kept as wild
> forest lands and should not be sold or leased or taken by any
> person or corporation, public or private, and authorized the
> bringing of an action to recover lands properly forming a
> part of the preserve. The defendants claimed title by adverse
> possession under five warranty deeds, the first of which was
> given in 1865, from which time until the commencement of this
> action the lands were occupied, cultivated, improved and sub-
> stantially enclosed, and the different occupants paid the yearly
> taxes assessed thereon. *Held,* that title by adverse possession
> could not be acquired as against the state, just as effectually
> as if section 362 of the Code of Civil Procedure, which pro-
> vides that the people of the state will not sue a person for or
> with respect to real property, unless the cause of action accrued
> within forty years before the action is commenced, etc., had
> not been in existence, and that the plaintiff was entitled to
> judgment. (P. 176.)

ACTION in ejectment.

Charles D. Newton, attorney-general (William
T. Moore, deputy attorney-general, of counsel), for
plaintiff.

Eugene D. Scribner, for defendants.

WHITMYER, J. The action is ejectment and was
commenced on March 16, 1918. Plaintiff is seeking
to recover certain lands, in the possession of defend-

ants, in the town of Hope, Hamilton county, in this state. Plaintiff claims under a comptroller's tax deed, dated February 18, 1851, recorded June 20, 1911. There is no evidence of occupancy during the period of redemption and defendants do not claim that the tax deed was void for failure to serve notice on alleged occupants. But, they claim title by adverse possession under five warranty deeds, namely, (1) John Bass to Albert Hanner, dated July 15, 1865, recorded September 28, 1865; (2) Albert Hanner to Joseph Bass, dated December 10, 1869, recorded October 2, 1911; (3) heirs or devisees of Joseph Bass, deceased, to Bradley Arnold, dated June 6, 1884, recorded October 2, 1911; (4) Bradley Arnold to William Baldwin, dated February 12, 1886, recorded October 26, 1900; and (5) William Baldwin to the defendants, dated October 4, 1904, recorded October 29, 1904. The evidence shows that the land was occupied, cultivated, improved and substantially inclosed from 1857 or 1858 to the time of the commencement of the action, a period of sixty years. And it shows that it was assessed yearly during that time against those claiming and that they paid the taxes. While thus occupied the forest preserve was created. That was accomplished by Laws of 1885, chapter 283, passed May 15, 1885. Section 7 provided: "All the lands now owned or which may hereafter be acquired by the State of New York, within the counties of Hamilton, * * *, shall constitute and be known as the forest preserve." Section 8 provided: " The lands now or hereafter constituting the forest preserve shall be forever kept as wild forest lands. They shall not be sold, nor shall they be leased or taken by any person or corporation, public or private." Section 11 provided: " The forest commission may bring in the name or on behalf of the people of the State of

New York, any action to prevent injury to the forest preserve or trespass thereon, to recover damages for such injury or trespass, to recover lands properly forming part of the forest preserve, but occupied or held by persons not entitled thereto, and in all other respects for the protection and maintenance of the forest preserve, which any owner of lands would be entitled to bring." The commission did not act. Section 7 was amended by Laws of 1890, chapter 8, so as to " except all such lands within the limits of any incorporated village or city, and except all such lands, not wild lands, as have been, or may hereafter be, acquired by the State of New York, upon or by fore-closure of or sale pursuant to any mortgage upon lands made to the commissioners for loaning certain moneys of the United States, usually called the United States deposit fund, and all such excepted lands acquired by the State of New York may be sold and conveyed as provided by law." Section 8 was amended by Laws of 1887, chapter 475, simply by combining the two sentences of the section into one. In 1894 the lands were published as wild, vacant or forest lands in possession of the state, in accordance with Laws of 1893, chapter 711, section 13. On January 1, 1895, section 7 of article VII of the Constitution went into effect. The section provides: " The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed. * * *." Thereafter and on April 25, 1895, the several acts were repealed by Laws of 1895, chapter 395, and section 280 of that act took the place of and was substantially in the language of section 11 of the first act, namely, chapter 283, Laws of

1885, except that it substituted the board of fisheries, game and forests for the forest commission as the body to enforce the law. The board did not act, and the situation was not changed when the action was commenced. Section 362 of the Code provides: " The people of the State will not sue a person for or with respect to real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless either (1) the cause of action accrued within forty years before the action is commenced, or (2) the people, or those from whom they claim, have received the rents and profits of the real property, or of some part thereof, within the same period of time." The state received its deed in 1851. So far as appears, occupancy commenced in 1857 or 1858. The first deed by an occupant was given in 1865. The forest preserve was created and the lands became a part thereof by the passage of the Forest Preserve Act in 1885. That provided that lands in the preserve should be forever kept as wild forest lands and should not be sold, or leased, or taken by any person or corporation, public or private. And it authorized the forest commission to bring, in the name or on behalf of the people, any action to prevent injury to the preserve or trespass thereon, to recover damages for such injury or trespass, to recover lands properly forming part of the preserve, but occupied or held by persons not entitled thereto, and in all other respects for the protection and maintenance of the preserve, which any owner of lands would be entitled to bring. It was a public act relating to a matter of public concern and all persons were bound to take notice of it. The amendments were to the same effect. And the constitutional provision gave greater force and permanency to the prohibitions of the act. The effect was the same as if the legislature had declared that the state intended to

hold the lands in the preserve as sovereign in trust for the people and did not intend to abandon same or to permit private persons or corporations to acquire any of its sovereign rights therein. While the Statute of Limitations was not mentioned and such lands were not excepted from its operation, nevertheless, it is clear that they became inalienable and that title by adverse possession could not be acquired as against the state, just as effectually as if the statute had not been in existence. *Weber* v. *Harbor Coms.,* 18 Wall. 57, 71. The *Weber* case arose in California and was decided by the Supreme Court of the United States. The limitation there was ten years and the statute provided, in language almost identical, excepting the period, with the language of the statute here, that the state would not sue for or in respect to real property unless its right or title had existed within said ten years or rents and profits had been received within that time. In 1853, the predecessors of the complainant acquired the title of the city of San Francisco to certain lots lying along its water front. In 1854, they built a platform along and adjoining the front and then constructed a wharf projecting from the center of the platform into the bay for a certain distance, leaving a space on each side for the approach and dockage of vessels. From that time, until the interference by the defendants, in 1867, complainant's predecessors and their successors were in the uninterrupted possession of the wharf and collected tolls and wharfage for its use. On April 24, 1863, the legislature of the state passed an act to provide for the improvement of the wharves, docks and water front in the city. It created a board of state harbor commissioners and required that they should take possession of and hold all that portion of the bay lying along the front and adjacent thereto for a certain distance, together with all the

improvements, rights, privileges, franchises, ease-
ments and appurtenances connected therewith or ap-
pertaining thereto, excepting such portions as might
be held under valid leases, and those portions when the
leases expired. It empowered them to institute suits
for the possession of any wharf or wharves and other
rights and privileges, for the recovery of tolls, dock-
age and wharfage, for the removal of obstructions and
abatement of nuisances on the front, and to prosecute
the suits to judgment. And it declared that they
should have and hold possession and control of the
front, with its said improvements, rights, privileges,
franchises, easements and appurtenances, for certain
specified purposes, but all relating to the protection
of the harbor and the construction of wharves, land-
ings and other improvements intended for the safety
and convenience of shipping and the promotion of
commerce. The court said that the act was a public
act relating to a matter of public concern of which all
persons were bound to take notice and that hardly
anything would be more expressive of the intention
of the legislature that the state should conserve its
title and interest in the whole front. And the court
concluded that the act " prevented the complainant
from acquiring the title of the state by operation of
the statute of limitations, as effectually as if that stat-
ute had not been in existence." The controversy there,
just as here, related to lands held by the state as sover-
eign in trust for the people and that decision is con-
trolling. And, if we assume here, as was assumed
there, that the statute of limitations applies to such
lands, just as it does to lands not so held, nevertheless,
the state asserted title by the passage of the forest
preserve act, before the expiration of the forty year
period, so that the presumption, if any, which arose in
favor of the occupants was rebutted and did not be-

come absolute, in the same way that the like result was brought about in the *Weber* case. Although the section states that " the people will not sue," assertion of title by the people, in the case of such lands at least, may be made by legislative act as well as by suit. *Weber Case,* 71. It becomes necessary, then, from either standpoint, to give judgment to plaintiffs.

Judgment to plaintiffs.