THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE BALDWIN and JENNIE BALDWIN, Appellants.

Third Department, May 4, 1921.

Public lands — adverse possession against State — distinction between lands held by State as sovereign and as proprietor — Statute of Limitations does not apply where lands held as sovereign — adverse possession not completed before creation of Forest Preserve not bar to State — failure of Forest Commission to assert title.

In the absence of statute authorizing it, lands of a sovereign State cannot be lost to or taken from the State by failure to assert her title, and, after the passage of a statute of limitations, such land only as the State holds

as a proprietor may be lost by adverse possession of an individual; it cannot lose such lands as it holds for the public, in trust for a public purpose.

The lands of the Forest Preserve created by chapter 283 of the Laws of 1885 and section 7 of article 7 of the Constitution, which became operative January 1, 1895, are held by the State in her sovereign capacity in trust for a public purpose and cannot be acquired by adverse possession.

The claim of the defendants that they have title to the lands in question, which are a part of the Forest Preserve, by adverse possession based on a deed to them in 1865, cannot prevail, since the State acquired title thereto by tax deed in 1851, and in 1885, when the Forest Preserve was created, the defendants had not acquired title by adverse possession.

The fact that the Forest Commission failed to assert title to the lands in question as it was authorized to do by chapter 283 of the Laws of 1885 does not prejudice the rights of the State, nor is it estopped from asserting its rights by the unauthorized acts or omissions of the Forest Commission.

JOHN M. KELLOGG, P. J., dissents, with memorandum.

APPEAL by the defendants, George Baldwin and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Hamilton on the 24th day of January, 1920, upon the decision of the court rendered after a trial without a jury at the Fulton county Trial Term.

*Eugene D. Scribner*, for the appellants.

*Charles D. Newton*, Attorney-General [*William T. Moore*, Deputy Attorney-General, of counsel], for the respondent.

VAN KIRK, J.:

The State acquired title to the lands in question, situated in Hamilton county, under a tax sale and a deed following, dated February 18, 1851. The acquired title of the State is not questioned, but the defendants claim they have gained title by adverse possession under deeds, the first of which is dated July 15, 1865. The lands had been occupied, cultivated and used, as was usual and customary in that section, since 1857 or 1858 by the defendants and their predecessors. During all the time these lands were assessed and taxes paid to the State by those in possession. These taxes cannot be looked upon as rents or profits of the real property.

The opinion of Mr. Justice WHITMYER gives a complete and very accurate statement of the facts of the case and the

statutes applicable and well expresses the conclusion he has reached.   (113 Misc. Rep. 172.)

The trial court has adopted the construction put upon the California statute in *Weber* v. *Harbor Commissioners* (18 Wall. 57) as the true construction of our statute (*infra*).

The appellants contest this construction.

The California statute, so far as material, reads as follows: " The People of this State will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the People to the same, unless —

" 1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced."   The remainder of the section as to rents and profits is identical with the corresponding New York statute, except as to number of years.   (Cal. Code Civ. Proc. § 315; N. Y. Code Proc. § 75.)

The California statute is identical with our statute, as it formerly existed (except the number of years), but the New York statute has been changed and now reads (Code Civ. Proc. § 362):

" When the People will not sue.   The People of the State will not sue a person for or with respect to real property, or the issues or profits thereof, by reason of the right or title of the People to the same, unless either:

" 1. The cause of action accrued within forty years before the action is commenced; or,

" 2.   *   *   * "

We have observed the difference in expression in the two statutes; also that, in the *Weber* case, the words in the California statute, unless such right or title " shall have accrued," are construed to mean " shall have existed; " and that the expression in that opinion, " no assertion of her [the State's] title or interest is made," is used as equivalent to the words of the statute, " unless   *   *   *   any action or other proceeding for the same is commenced; " also the presumption of a grant arising under the permission given in the statute is held to be rebutted by the assertion of title in the legislative act referred to; and further that, if our statute (Code Civ. Proc. § 362, *supra*) is strictly construed, the cause of action by the State did not accrue within forty

years before the action was begun, since it accrued in 1857 or 1858 and the action was not begun till March, 1918, and, therefore, by its agreement in the statute the State would not sue. (*Fulton Light, H. & P. Co.* v. *State of New York,* 200 N. Y. 400, 420; *People* v. *Arnold,* 4 id. 508.)

We are of the opinion that the vital question in this case is this: Was the land, the title of which is in question here, owned and held by the State as a sovereign in trust for the People, or as a proprietor only?

There is a well-recognized distinction between lands held by the State as sovereign in trust for the public and lands held as proprietor only, for the purpose of " sale or other disposition." (*Weber* v. *Harbor Commissioners, supra,* 68.) In either circumstance, unless a statute (making an agreement on behalf of the People not to sue) authorizes it, lands of a sovereign State cannot be lost to, or taken from, the State by failure to assert her title (2 C. J. 213; *Fulton Light, H. & P. Co.* v. *State of New York,* 200 N. Y. 400, 420; *St. Vincent Orphan Asylum* v. *City of Troy,* 76 id. 108; *Hays* v. *United States,* 175 U. S. 248, 260); and, after such a statute has been passed by a State, such lands only as the State holds as a proprietor may be lost to the State; it cannot lose such lands as it holds for the public, in trust for a public purpose, as highways, public streams, canals, public fair grounds. (*Burbank* v. *Fay,* 65 N. Y. 57; 2 C. J. 213, 214, 215.)

The lands in question here were held for a public use before the time within which title by adverse possession could be acquired, and these defendants have not acquired title thereto.

We should have in mind that the lands in question are not within any incorporated village or city and are not lands which have been " acquired by the State of New York, upon or by foreclosure of or sale pursuant to any mortgage upon lands made to the commissioners for loaning certain moneys of the United States, usually called the United States deposit fund, and all such excepted lands acquired by the State of New York may be sold and conveyed as provided by law " (Laws of 1890, chap. 8, amdg. Laws of 1885, chap. 283, § 7), but all such lands not excepted may not be sold or conveyed in any manner. By the Laws of 1885, chapter 283, the Forest Preserve was created. This statute declared (§ 7): " All the

lands now owned or which may hereafter be acquired by the State of New York, within the counties of * * * Hamilton, * * * shall constitute and be known as the Forest Preserve." (See, also, Id. § 7, as amd. by Laws of 1887, chap. 639; Laws of 1888, chap. 520; Laws of 1889, chap. 24, and Laws of 1890, chap. 8.) Section 8 of the act of 1885 provided: " The lands now or hereafter constituting the Forest Preserve shall be forever kept as wild forest lands. They shall not be sold, nor shall they be leased or taken by any person or corporation, public or private." (See, also, Laws of 1887, chap. 475, amdg. said § 8.) In 1893 (Laws of 1893, chap. 332) and in 1895 (Laws of 1895, chap. 395) the act of 1885 was repealed, but the repealing acts contained identical provisions with those of the act of 1885, and so these statutory provisions have continued until to-day. (*People ex rel. Forest Commission* v. *Campbell,* 152 N. Y. 51. See Forest, Fish and Game Law [Gen. Laws, chap. 31; Laws of 1900, chap. 20], § 216 *et seq.,* as amd.; Forest, Fish and Game Law [Consol. Laws, chap. 19; Laws of 1909, chap. 24], § 34 *et seq.,* as amd.; Conservation Law [Consol. Laws, chap. 65; Laws of 1911, chap. 647], § 50 *et seq.,* added by Laws of 1912, chap. 444, as amd.; Conservation Law, § 50 *et seq.,* added by Laws of 1916, chap. 451, as amd.; Id. § 62, added by Laws of 1916, chap. 451, as amd. by Laws of 1917, chap. 266.) Article 7, section 7, of the Constitution became operative January 1, 1895, and provides: " The lands of the State, now owned or hereafter acquired, constituting the Forest Preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed." These provisions have been continued by the amendments since made in 1913 and 1918 to that section of the Constitution. (See Laws of 1914, p. 2373; Laws of 1919, p. 1783.) On December 13, 1894, the Comptroller's notice, as to ownership and possession, authorized by the statute (Laws of 1893, chap. 711, § 13; revised by Tax Law [Gen. Laws, chap. 24; Laws of 1896, chap. 908], § 133; now Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 133) was duly published, declaring that these lands in

question were of the " wild, vacant and forest lands * * * to which the State holds title, and that from and after three weeks from the 13th day of December, 1894, possession thereof shall be deemed to be in the Comptroller of this State." (For the purpose and effect of this act, see *Saranac L. & T. Co.* v. *Roberts,* 195 N. Y. 303, 321; *People ex rel. Turner* v. *Kelsey,* 180 id. 24, 26.) " The Forest Commission, as the representative of the State, has the actual possession of the lands embraced in the Forest Preserve." (*People ex rel. Turner* v. *Kelsey, supra.*) Thus the State, by public statute and by published notice, of which all the inhabitants of the State were bound to take notice, openly claimed title to this property and declared the public use to which it was dedicated. Since 1885 the State has held, and been in possession of, this land as part of its Forest Preserve, kept as a public park in trust for the people, to promote the general health and welfare and to conserve the streams. (*People ex rel. Turner* v. *Kelsey, supra; People ex rel. Forest Commission* v. *Campbell, supra.*) In the opinion in the *Kelsey* case this language was used: " We have referred to the provisions of the Constitution for the purpose of showing that these lands are forever reserved for the Forest Preserve and that no power exists on the part of the Legislature or of any officer or department of the State to dispose of, or in any manner deprive the People of their title to the lands. Not only are these lands brought within the protecting power of the Constitution, but that of the Legislature as well. Various statutes have been enacted, by which the police power is extended over this territory. It is made a public park, placed under the care, control and supervision of a commission and watched and guarded by wardens, foresters and game protectors who actually reside upon the preserve and who may arrest violators of the statute in cases specified, without warrant." There was by statute and Constitution a complete dedication of the lands owned by the State in Hamilton county to a public use to endure " forever." We can conceive no reason why the State had not the power to so dedicate these lands it then owned as against any and all persons. When the act of 1885 was passed, and article 7, section 7, of the Constitution was adopted, these lands in Hamilton county were " owned " by the State. No title adverse to the State

had been acquired by any person.  In the act of 1885 (§ 11) the Forest Commission was authorized (which in this case was a command, *Medbury* v. *Swan*, 46 N. Y. 200, 202; *Phelps* .v. *Hawley*, 52 id. 23, 27) to bring, in the name of the People of the State of New York, any action to prevent trespass on lands, and to recover lands, properly forming part of the Forest Preserve, but occupied or held by persons not entitled thereto, and in all other respects for the protection and maintenance of the Forest Preserve, which any owner of lands would be entitled to bring.  Had an action been then brought against these defendants, or their predecessors in occupation, no question as to the State's title could have been successfully raised.  Such action was not brought as to these lands, but the State is not prejudiced in its rights by the failure of its appointed agents or officers to obey its commands, nor by their unauthorized acts or omissions is the State estopped from asserting its rights.  (*Wells* v. *Johnston*, 171 N. Y. 324, 328; *People* v. *Santa Clara Lumber Co.*, 213 id. 61.)  These lands then, so held, could not be acquired by any person by adverse possession.  (*Burbank* v. *Fay, supra; Waterloo W. M. Co.* v. *Shanahan*, 128 N. Y. 345; *Weber* v. *Harbor Commissioners, supra*, 70.)

Neither the Statute of Limitations, nor title by adverse possession, is pleaded in the answer, but no question as to the sufficiency of the answer is raised and the evidence tending to show an adverse possession was admitted without objection.

The judgment should be affirmed, with costs to the respondent.

All concur, except JOHN M. KELLOGG, P. J., dissenting with a memorandum.

JOHN M. KELLOGG, P. J. (dissenting):

Upon the trial no question was raised as to the pleadings, and all the facts with reference to the plaintiff's title, and the defendants' title and possession, and the respective rights of the parties, were fully litigated without question or objection, and the pleadings may be considered as amended to conform to the proofs.

The State obtained a tax deed in 1851, which was not recorded until 1911. No notice of this deed, or of any claim by plaintiff, was given to the defendants or any of their predecessors in title, and the premises were bought, sold and resold, possessed, improved and used by them, with the understanding that there was no question about the title. The Comptroller included these lands in a notice published in December, 1894, pursuant to section 13 of chapter 711 of the Laws of 1893 (now section 133 of the Tax Law), in a list of the wild, vacant and forest lands held by the State. However, these lands were not of that character, but were cultivated, improved and assessed to and in the actual possession of the defendants and their grantors. The publication, therefore, has no effect as to them.

The defendants base their claim of title upon a deed given by John Bass to Albert Hanner, in July, 1865, and four later deeds, all of which deeds were duly and promptly recorded and before the recording of the plaintiff's deed. At the time of the conveyance by John Bass to Hanner, in July, 1865, the premises were in the actual, undisturbed possession of the grantor, who was living in a log house upon the said premises. There were then there fifteen acres of meadow and a log barn, and the land was fenced, cultivated and improved and used substantially in the manner in which farms in that locality were used. Hanner, at the time of the trial, was eighty-two years of age. He conveyed the land three years after he received the deed, but swears that he was in possession for nine or ten years before he sold them. It is a fair inference, therefore, that he was in possession from six to seven years upon contract of purchase before he received his deed, which would date his possession from about 1858. The State collected taxes from the defendants and their predecessors in title. Exact proof, from the nature of things, cannot be made as to the facts at so remote a time and, necessarily, liberal inferences must be drawn, from the scanty evidence, in favor of defendants, who have succeeded to the rights of Bass and whose possession has been undisturbed and unquestioned during all the intervening years.

The Statute of Limitations is one of repose, based upon the theory that the mists of time prevent the actual facts

from appearing, and it is improbable that any one now living can state the facts as to the time when Bass entered into possession. They can be judged of from the condition of the farm in 1857, at the time the first witness describes it as occupied by Bass. The description of the premises at that time makes it certain that the clearing, the cultivation and the improvement of the property must have begun several years before 1857, and inferences may be liberally resorted to to prevent an apparent injustice where the State has been so remiss in asserting its rights and the defendants and their predecessors have been paying the plaintiff taxes and improving the property.

Manifestly Hanner and his successors in title, including the defendants, were purchasers in good faith and for a valuable consideration, and the plaintiff's prior unrecorded deed establishes no title as against them. As we have seen, it affirmatively appears that none of them had any notice of the plaintiff's claim, and each claimed to be and understood that he was the absolute owner of the property. Section 241 of the former Real Property Law (Gen. Laws, chap. 46; Laws of 1896, chap. 547) first brought into the Recording Act (now Real Property Law, § 291) the provision making an unrecorded conveyance void as against subsequent purchasers with recorded deeds " from the same vendor, his heirs or devisees." There is a question whether the Legislature, which brought the quoted words into the statute, did not at the same session take them out by amending the Revised Statutes upon that subject. (1 R. S. 756, § 1, as amd. by Laws of 1896, chap. 572; *Assets Realization Co.* v. *Clark,* 205 N. Y. 105, 119.) That question, however, is quite immaterial, as the recording of Hanner's deed gave him and his successors title to the property which the plaintiff could not question.

We must, therefore, conclude that at the time the Forest Preserve Act was passed the State had no title to the property which it could enforce against Hanner's successors in title. If, however, it is considered that the State did have title at the time the Forest Preserve Act was passed in 1885, it held the title as a proprietor and not as a sovereign. The premises were held for sale, or other disposition, and were charged with no public trust. When we consider that

the State never used the property, or claimed it, but that it was held adversely by others, it cannot be said that the passage of the Forest Preserve Act made this a public property so as to change the nature of the State's holding from that of a proprietor into that of a sovereign. We cannot quarrel with the rule that a Statute of Limitations, in general terms, does not bar the State. The State, unless mentioned in the act, is presumed to be excepted from its burden. (17 R. C. L. 689, § 37; *People* v. *Gilbert,* 18 Johns. 227, 229; *People* v. *Herkimer,* 4 Cow. 345.) The Code of Civil Procedure (§ 362) provides that "The People of the State" will not sue a person for or in relation to real estate after forty years from the time of the accruing of the claim, or unless it has received the rents and profits within that time. There is no place for presumption, as the section is an express limitation upon the People of the State. (See *Fulton Light, H. & P. Co.* v. *State of New York,* 200 N. Y. 400, 421, 422.) The statute is one of repose, to prevent overzealous public officials from harassing a person occupying land for forty years or more by the prosecution of stale claims. The limitation does not rest upon a presumption of a grant; it simply prevents the use of the court for the prosecution of such a claim. It does not purport to affect the title to property; it only makes the occupant immune from action by the State. The presumption of a grant arising from lapse of time does not assume that the grant was made at any particular time, but at some time during the occupancy. It is more natural to assume that it took place at about the time of the inception of the occupancy than at a later date. I favor reversal.

Judgment affirmed, with costs to the respondent.