THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ROBERT D. DOUGLASS, Respondent.

Third Department, July 2, 1926.

**State — Forest Preserve — deed to State of land in Forest Preserve — deed subsequently given to defendant but recorded before deed to State does not give defendant title — State may recover in ejectment.**

Under the circumstances of this case the State of New York may recover in ejectment certain lands in the Forest Preserve which were deeded to it, notwithstanding that subsequent to the deed given to the State the grantors deeded the same land to the defendant which deed was recorded prior to the time of recording the deed to the State.

APPEAL by The People of the State of New York from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Franklin on the 26th day of February, 1923, upon the decision of the court rendered after a trial at the Franklin Special Term.

. *Albert Ottinger, Attorney-General* [*Eric J. Lake* of counsel], for the appellant.

*Herbert P. Coats,* for the respondent.

VAN KIRK, J. This action in ejectment was tried at Special Term. The court, at the close of the evidence, on defendant's

motion and without making findings, directed a judgment dismissing the complaint upon the merits. The lands in question are in the Adirondack Park in Franklin county.

The parties claim title from a common grantor. The ground title rested in Messrs. Weed, Turner and Riley. Riley conveyed his interest to Weed and Turner, who, on March 14, 1901, conveyed to the State the lands in question, on which date the deed was duly executed and delivered. It is stipulated that this deed includes the lots in dispute. Weed conveyed his interest in the lands to Turner who executed and delivered to the defendant two quitclaim deeds, one on October 21, 1901, and the other January 14, 1902; these purporting to convey to him whatever interest Turner had in the two lots in dispute.

The deed to the plaintiff gave to it title to the premises, but the defendant's deeds were recorded before the deed to the plaintiff, and defendant invokes the aid of the recording act (Real Prop. Law, § 291), the essential part of which reads: " Every such conveyance not so recorded is void as against any subsequent purchaser in good faith and for a valuable consideration, from the same vendor, his heirs or devisees, of the same real property or any portion thereof, whose conveyance is first duly recorded." In our view there are two answers to this contention:

*First.* When the deed to the plaintiff was delivered, title passed to it and it became the owner of the land. It then became part of the Forest Preserve and its title was assured to the State perpetually by the Constitution, article 7, section 7 of which, in effect since January 1, 1895, provides: " The lands of the State, now owned or hereafter acquired, constituting the Forest Preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed." The Forest Preserve was established by chapter 283 of the Laws of 1885, under which lands owned by the State or which were thereafter acquired by the State within Franklin county (with other counties) shall constitute and be known as the Forest Preserve. This act has been amended and in 1895 (Chap. 395) was repealed, but the provisions of the act of 1885 material here were re-enacted and at the time of the transactions involved in this action were and ever since have been a part of the laws of the State. (See Fisheries, Game and Forest Law [Laws of 1895, chap. 395], § 270; Forest Fish and Game Law [Laws of 1909, chap. 24], § 34; now Conservation Law [Laws of 1911, chap. 647], § 62, added by Laws of 1916, chap. 451, as amd. by Laws of 1917, chap. 266.) The defendant cannot question the

title of the common grantor to him and the People of the State. So long as this provision of the Constitution remains, these lands must remain the property of the State, and "no power exists on the part of the Legislature or of any officer or department of the State to dispose of, or in any manner deprive the People of their title to the lands." (*People ex rel. Turner* v. *Kelsey,* 180 N. Y. 24, 26.) Since the State was the unquestioned owner of the property on March 14, 1901, months before the quitclaim deeds were delivered to the defendant and by him recorded, the recording act of the Legislature could not deprive the People of this title. And further the failure to record the deed to the State was an unauthorized act or omission on the part of one of its officers or agents and the rights of the State could not thereby be prejudiced. (*Wells* v. *Johnston,* 171 N. Y. 324, 328; *People* v. *Santa Clara Lumber Co.,* 213 id. 61.) Whether or not the recording act applies to conveyances to the State when the State takes title as proprietor need not be considered. We hold simply that it cannot apply to lands in the Forest Preserve the title to which the State has acquired to be held as sovereign. (*People* v. *Baldwin,* 197 App. Div. 285; affd., 233 N. Y. 672.)

*Second.* Defendant was not a purchaser in good faith. A reading of the record, including the correspondence between Turner and defendant and the testimony of the defendant himself, cannot fail to persuade that defendant took title knowing of the exact condition of the title to this real estate and of the claim of the State thereto. The two pieces of land were included in land previously sold for taxes and thereafter conveyed by the Comptroller to the People of the State. An application was made to the Comptroller, who had jurisdiction and authority to act in such matter, to cancel those sales; and, after full hearing, the sales were canceled by virtue of the statute in such case made and provided, upon satisfactory evidence furnished to the Comptroller on the ground that the land had been assessed as non-resident land, whereas in fact it was land occupied and possessed at the time and should have been assessed as resident land. An application was later made to the Comptroller to revoke this cancellation, which he denied; and thereafter a certiorari proceeding was instituted to review this latter determination. While this proceeding was pending Messrs. Weed and Turner asked for a compromise of the controversy and an agreement was made, the Forest Preserve Board acting for the People, which provided that Weed and Turner should convey to the State all their lands which had been sold for taxes as above stated and which they had not at the time conveyed to third parties; the State agreed to quash the certiorari proceeding. Thereupon

this deed to the State was executed. This defendant had received from Weed and Turner in 1893 a deed to a piece of land not here in question and the settlement protected his title to that piece. He appeared in the proceeding for cancellation of the tax sales, also in the certiorari proceeding, and made an affidavit stating facts and reasons why he claimed the cancellation should not be revoked. His attorney appeared and consented in writing that the order quashing the writ be made; this was a part of the compromise, and defendant had full knowledge as to the compromise and its purpose. Indeed the respondent in his brief says: " As the agreement provided for the conveyance to the State of all lands in the tract not theretofore conveyed by Weed and Turner and for the full settlement and satisfaction of all claims of the State in lands theretofore conveyed by Weed and Turner. it must be held that the deed from Weed and Turner to the State was principally for the benefit of Weed's and Turner's grantees who were thereby made privies to the agreement." One of these " grantees " was the defendant. We make brief reference to the correspondence between Turner and defendant, beginning October 6, 1901, and ending March 17, 1902; this shows that defendant was conversant with the whole of the State title when he took his deed. On October 9, 1901, defendant wrote in respect to one of these pieces: " If the title is good to this land, and I would not get into any conflict with the State authorities, I should be willing to pay you $500, if there are 19 or 20 acres, but having had one fight with the State, I do not care about having another." On October 17, 1901, Turner wrote: " I have prepared a Deed of the land but if you are going through here before long, I would prefer to have a talk with you before delivering it. * * * I would request for reasons that I can tell you, that nothing be said about this land matter until after I see you. * * * I enclose a letter to the Co. Clerk and his answer to same as to record title. I can assure you that the title *previous to the last two years*, was in myself and Mr. Weed, and I have a deed from him of all his interests. I did not want to go to the expense of a long search." (The deed to the State was within " the last two years.") On October 21, 1901, apparently in answer to the foregoing, defendant wrote: " Let me know when you send the deed. I should like to have it recorded as soon as possible." On October 23, 1901, he inquires: " Is there any one that knows of the sale that might give trouble? " And on October twenty-fourth Turner wrote: " In my opinion you have a good title now and will have no one to contest it, those squatters up there will not squat on any land that you own when I tell them it belongs to you as I shall when I see them." On

December 6, 1901, Turner wrote defendant: " There is no *individual* that can in any way impeach my title, and there are no taxes on the land that are a lien and no tax sales either." These had been canceled. And on December twenty-ninth Turner wrote with regard to the other piece: " I would suggest that it might be best to take deed in someone else name at present, which could be transferred to you subsequently." Is there any question whether defendant was a " purchaser in good faith? "

For these reasons we conclude that the People of the State have not been deprived of their title to these lands by or under the recording act. But the defendant then argues that the Forest Preserve Board had no authority to compromise the dispute as to the title and, therefore, the agreement of compromise and the subsequent deed to the State were invalid, citing the State Constitution (Art. 7, § 7) and *People* v. *Santa Clara Lumber Co.* (213 N. Y. 61). The statutes and the Constitution were intended to render inalienable any of the lands owned by the State and which constituted with other lands the Forest Preserve. Lands simply claimed by the State are not so protected. If lands in the Forest Preserve are owned by the State, title thereto cannot be acquired by adverse possession (*People* v. *Baldwin*, 197 App. Div. 285; affd., 233 N. Y. 672), nor in any manner may the People of the State be deprived of their title. (*People ex rel. Turner* v. *Kelsey*, *supra.*) When, however, there is a dispute as to the title, that dispute may be settled by some authority. If the State is the owner, neither the courts, nor any other authority, could order or permit its alienation. On the other hand, in a suit involving the title as between the State and another, the court may render judgment against the State if the evidence so justifies. The Constitution does not prohibit the determination of title by a court, or by an agent of the State authorized by the Legislature to that end. The Comptroller in determining the validity of the tax sale is such an authorized agent. When he in good faith determined that the tax sales were invalid and, therefore, the State was not the owner, the Constitution no longer stood in the way of the abandonment of its claim. (*People* v. *Santa Clara Lumber Co.*, 213 N. Y. 61, 66.) Indeed the respondent argues that there is no question that the tax sales were invalid and were legally revoked. It follows then that the State was not the owner of any of the lands in question here and the Constitution did not stand in the way of the conveyance to the State when made. And further, these provisions of the Constitution are intended to protect the State's title in lands that it owns; they are not intended to protect the title to individuals. The State is content with the adjustment

made and the defendant may not invoke the aid of the Constitution to take from the People lands which that same Constitution gives forever to them. The position taken by the defendant in this respect is inconsistent and unavailing.

We conclude that, upon the delivery. of the deed from Weed and Turner to the People of the State of New York, March 14, 1901, the State became the owner of the lands described in said deed. This deed was acquired in good faith for the benefit of the People of the State and was for a good consideration and thereby the lands described in said deed became a part of the Forest Preserve. Thereafter, neither by act of the Legislature, nor by the act of any agent or representative of the State, could the People of the State be deprived of this title; and that the material allegations of the complaint were established by the evidence.

The judgment should, therefore, be reversed and judgment for plaintiff be entered for possession of the premises by plaintiff.

All concur; COCHRANE, P. J., and HINMAN, J., in the result; H. T. KELLOGG, J., not sitting.

Order and judgment reversed on the law and facts, and judgment in favor of the plaintiff for possession of the premises as described in the complaint is directed, with costs in both courts.

The court finds the facts as alleged in the complaint, and that the defendant was not a purchaser in good faith of the lands in question.