Louis G. Bruhn, J.
This is an article 78 proceeding seeking a judgment declaring the determination made by the respondent, Henry L. Diamond on November 30, 1971, granting a permit to fill in the Hudson River at 190 River Road, Grand View-on-Hudson, illegal and void and directing such permit to be revoked and rescinded.
Commissioner Diamond's determination is attacked as illegal because, first, the rules and regulations of the Commissioner of Environmental Conservation are not in conformity with provisions of the Constitution and the Environmental Conservation Law and next, that his determination is arbitrary and capricious and not supported by evidence in the record.
The present proceeding was instituted because the respondent, Thiermann, applied to the Department of Environmental Conservation, pursuant to section 429-b of the Conservation Law, for a permit to construct a concrete seawall on a portion of underwater property in the Hudson River and to fill in the enclosed area opposite his shore property.
Such application was motivated by a desire to build a residence on property which required such fill to conform to local zoning regulations.
Hearings on such application were held on July 27, August 10 and September 15, 1971 not by virtue of any statutory mandate but rather by discretion.
Following such hearings the determination to grant the permit was made and the article 78 proceeding followed.
The petitioners argue that the rules promulgated by the Commissioner contain standards for the issuance of a permit which are inconsistent with the policy of the State as contained in section 4 of article XIV of the Constitution and section 10 of the Environmental Conservation Law.
They argue further that the standards contained in the rules require a determination to be in the public interest and that the *901 proposal will not cause unreasonable, uncontrolled or unnecessary damage to the natural resources of the State while the constitutional provision and section 10 require that the State conserve and protect its natural resources and environment.
An examination of the above referred to constitutional provision and the relevant statutory provisions contained in the Environmental Conservation Law and the Conservation Law lead to the conclusion that these statutes envision the wise use, development and control of the State’s natural resources and the prevention of unreasonable depletion, defilement and damage which goals the rules and regulations do not dilute or dissolve but rather are valid implementations of the State policy expressed in its Constitution and statutes.
Equally lacking in merit is the petitioners’ contention that the determination should have been made by the hearing officer, rather than the acting central permit agent.
In the case of Matter of Elite Dairy Prods, v. Ten Eyck (271 N. Y. 488, 497-498) the court stated: “ Where an application is granted it is of no practical importance whether or not the Commissioner makes formal findings of fact, or indeed whether or not a formal order is made by the Commissioner; for the issuance of the license clearly indicates that the Commissioner is satisfied of the existence of all facts which the Legislature has there made conditions precedent to the grant of a license. The courts are not concerned with the steps by which the Commissioner has become satisfied, or the manner in which his determination is made until the determination is challenged. There, no rights of the applicants are invaded if the Commissioner ’s determination is reached by reliance upon the report or memorandum of a trusted employee. ’ ’
Therefore, the only remaining question is whether the determination arrived at is arbitrary and capricious.
The resolve of such question requires, first, an examination of section 429-b of the Conservation Law of the State of New York.
Such section provides, in part: “ 1. No person * * * shall excavate or place fill in the navigable waters of the state, or in marshes, estuaries, tidal marshes and wetlands that are adjacent to and contiguous at any point to navigable waters as defined by subdivison four of section two of the Navigation Law and that are inundated at mean high water level or tide, unless a permit therefor shall have first been obtained pursuant to subdivision 3 hereof * * *
“ 3. The Commission, before granting such permit shall ascertain the probable effect on the use of such waters for navigation, *902 the health, safety and welfare of the people of the state and the effect on the natural resources of the state, including soil, forests, water, fish and acquatic resources therein, likely to result from such channel excavation or fill. ’ ’
After personally reading the record of the three days of hearings, examining the photographs and other exhibits submitted and after considering the lengthy and well organized briefs also provided, this court concludes that the Commissioner’s ultimate determination was not arbitrary or capricious.
Such conclusion squares with what I had to say in the case of Matter of Leathersich v. New York State Water Resources Comm. (57 Mise 2d 856, 860): “ The determination may not hinge on whether or not public opinion is for or against, although such factors may be considered, nor may it be predicated on whether or not this court agrees or disagrees with the result reached, since this court must not substitute its judgment for that of the respondent.
‘ ‘ Instead the determination must be resolved on the question of whether or not on the whole record the respondent acted arbitrarily or capriciously in reaching its determination. ’ ’
Therefore, the application must be and hereby is dismissed on the merits.