Edmund L. Shea, J.
This is an article 78 CPLR proceeding seeking a judgment vacating and nullifying the order ■ of the respondent Diamond, dated June 28, 1973, effective July 10, 1973 (6 NYCRR 196.4), which prohibits the operation of seaplanes on some 700 designated bodies of water located within the forest preserve, and to vacate and nullify so much of the State Land Master Plan prepared by the Adirondack Park Agency in consultation with the Environmental Conservation Department, and signed by Governor Rockefeller on June 20, 1972, as regards the landing of seaplanes on bodies of water wholly bounded by the State land within the Adirondack Park.
Alleging the invalidity of the action of respondents in prohibiting petitioners from landing on certain designated bodies of water, which in prior years had been utilized by petitioners in their air taxi business, and further alleging irreparable damage because of the imminence of the big game hunting season, petitioners moved for a preliminary injunction pursuant to CPLR 7805 and CPLR 6313 and requested a temporary stay. A hearing on the temporary stay was held on October 24, 1973, which resulted in the court granting a temporary restraining order. Because of the shortness of notice to the Attorney-General, he moved for what was designated a reargument, and a further hearing with all parties present was held on October 31, 1973. Since all arguments of the parties have been fully heard, the court will now consider the proceedings herein as requiring a decision on the question of a stay or preliminary injunction pending the final adjudication of this matter.
The acts of respondents, and particularly the determination of the respondent Commissioner Diamond, in enacting the rule and regulation prohibiting the operation of aircraft on designated bodies of water in the forest preserve, are attacked as illegal, as a violation of petitioners’ constitutional rights, and in violation of lawful procedure, and further, that such regulation was arbitrary, capricious and an abuse of discretion.
*255 Certain technical objections made by petitioners respecting the motion for reargument were considered by the court at the hearing held on October 31, and were denied. In addition, a motion was made by attorneys representing the Adirondack Mountain Club, Inc., the Association for the Protection of the Adirondacks, and the Atlantic Chapter of the Sierra Club to intervene herein as interested persons pursuant to subdivision (d) of CPLR 7802, which motion was opposed only by petitioners.
Subdivision (d) of CPLR 7802 states that a court “ may allow other interested persons to intervene ” in an article 78 proceeding. This subdivision grants a court broader power to allow intervention than is provided in CPLR 1013 (Muccioli v. Board of Stds. & Appeals of City of N. Y., 42 Misc 2d 1088). In addition, the Adirondack Mountain Club, Inc. owns real estate surrounded by forest preserve lands and thus has a direct interest in the outcome of this litigation. (See, e.g., Brown v. Waryas, 45 Misc 2d 77.) The Association for the Protection of the Adirondacks is a New York corporation, incorporated in 1902 for the purpose of supporting the principles underlying section 1 of article XIV of the State Constitution. It was one of the successful parties in the case of Association for Protection of Adirondacks v. MacDonald (253 N. Y. 234) involving use of the forest preserve. The Atlantic Chapter of the Sierra Club is a .subdivision of the nationally known Sierra Club which is primarily concerned with conservation and protection of the natural and scenic resources. The interest of these parties having been established, the motion to intervene is therefore granted.
Whether a motion is made under CPLR 7805 or CPLR 6313, the requirements for establishing the relief of a temporary injunction are the same. (Cf. Stewart v. Parker, 41 A D 2d 785.) Injunctions pendente lite are sparingly issued. A clear legal right thereto, as well as a showing of irreparable damage to the moving parties, must be present before such relief may be granted. (Graves v. Lombardi, 42 A D 2d 700; Western N. Y. Motor Lines v. Rochester-Genesee Regional Transp. Auth., 72 Misc 2d 712; De Candido v. Young Stars, 10 A D 2d 922; Park Terrace Caterers v. McDonough, 9 A D 2d 113.) The burden of establishing the right to a preliminary injunction is upon the moving party. (Pine Hill-Kingston Bus Corp. v. Davis, 225 App. Div. 182.)
The .affidavits on this motion establish that petitioner Herbert Helms has been operating an air taxi for some 27 years from a base on Long Lake, New York. Thomas Helms is his son and is employed in the Helms aerial service. Much of the petitioners’ *256 business consists of carrying hunters and fishermen to the remote regions of the Adirondacks, which have now been declared " off limits ’ ’ insofar as it affects petitioners ’ landing their seaplanes on lakes designated in the order of Commissioner Diamond. Petitioners claim they will be deprived of 50% of their total revenue from the operation as a result of such order. For the purposes of this motion, the court believes it may be conceded that petitioners ’ loss of business as a result of being unable to land on these lakes is a serious matter to petitioners and will likely cause them severe hardship. However, petitioners are also required to show a clear legal right to relief before a preliminary injunction may be granted. This necessitates an examination to some extent of the underlying action.
The first consideration is whether the acts of respondents are within the scope of their delegated authority and not in conflict with other applicable laws whereby the Legislature has restricted such authority.
The primary source of any powers regulating the use of State owned lands in the Adirondacks stems from section 1 of article XIV of the State Constitution, which provides: ‘ ‘ The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, • shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed.” There follow in section 1 certain exceptions approved as constitutional amendments such as construction of certain highways, ski trails, and allowing specific exchange of small amounts of land, all of which are not especially pertinent in the proceeding, except, perhaps, to highlight the rigid constitutional provisions of the 11 forever wild ’ ’ clause.
The basic quoted part of section 1 of article XIV has been a part of the 'Constitution since 1895. From an early time it was held that the predecessors of the present Environmental Conservation Department had actual possession, control, and supervision of the forest preserve as a representative of the State. (People ex rel. Turner v. Kelsey, 180 N. Y. 24; People v. Baldwin, 197 App. Div. 285.) The Department of Environmental Conservation and the Commissioner are given broad statutory authority for the care, custody, and control of the forest preserve by sections 3-0301 and subdivisions 1 and 3 of ■section 9-0105 of the Environmental Conservation Law, which broadly grant power to the department to ‘ ‘ make necessary rules *257 and regulations to secure proper enforcement of the provisions hereof ”.
The Adirondack Park Agency was created by the Legislature in 1971. In recognizing the purposes and functions of the Adirondack Park Agency, a distinction must be made between public-owned lands and privately-owned lands within the Adirondack Park. At the present time, State ownership accounts for some 40% of the 6,000,000 acres of land within the park, with the balance, or about 3,500,00 acres, being in private hands. It is obvious that the basic function and concern of the Adirondack Park Agency is with the use and development of private lands with the park (Executive Law,'§ 801 ei seq.). In addition, the Adirondack Park Agency was required to prepare and submit to the Governor for his approval a master plan developed in consultation with the Department of Environmental Conservation for management of State lands, whether now owned or hereafter acquired, located in the Adirondack Park. (Executive Law, § 807.) The master plan as approved by the Governor was at least impliedly recognized by the Legislature by chapter 348 of the Laws of 1973. Section 816 of the Executive Law now provides in part: “ 1. The department of environmental conservation is hereby authorized and directed to develop, in consultation with the agency, individual management plans for units of land classified in the master plan for management of state lands heretofore prepared by the agency in consultation with the department of environmental conservation and approved by the governor. Such management plans shall conform to the guidelines and criteria set forth in the master plan. Until amended, the master plan for management of state lands and the individual management plans shall guide the development and management of state lands in the Adirondack park.”
Subdivision 2 of section 811 of the Executive Law provides: “ Any pre-existing land use and development shall not be subject to review by the agency ”. “ Pre-existing land use and development ” is defined by subdivision 48 of section 802 of the Executive Law as meaning ‘' any land use or development, including any structure, lawfully in existence prior to August one, nineteen hundred seventy-three ’ ’.
These provisions as to nonconforming uses must be deemed to apply only to privately-owned land within the park, and not public land owned by the State. It is impossible under the Constitution for individuals to acquire vested rights in the forest preserve by means of adverse possession, long use, or a *258 .prescriptive right. (People v. Douglass, 217 App. Div. 328; People v. Baldwin, 197 App. Div. 285, supra.)
The enactment of legislation creating the Adirondack Park Agency does not diminish or dilute the power of the Commissioner of Environmental Conservation to make rules and regulations for the use of the forest preserve. (See Executive Law, '§ 818, .subd. 5.) In respect to preparing the master plan, the agency is thus acting in an advisory capacity or as a planning agency and has left enforcement of such plan to the appropriate agency of the State. Section 816 of the Executive Law relating to the master plan for management of State lands provides in subdivision 3 that the agency and the Department of Environmental Conservation are ‘ ‘ authorized to develop rules and regulations necessary, convenient, or desirable to effectuate the purposes ” of the section.
Petitioners also allege the conceded fact that no public hearing was held by the Department of Environmental Conservation prior to issuance of the regulation prohibiting the operation of mechanically propelled vessels and aircraft in the forest preserve. They specifically point to paragraph a of subdivision 2 of section 3-0301 of the Environmental Conservation Law, as requiring such a hearing. This section provides, in part: “ To further assist in carrying out the policy of this state as provided by section 1-0101 of the chapter the department, by and through the commissioner, shall be authorized to: a. With the advice and approval of the board, adopt, amend or repeal environmental standards, criteria and those rules and regulations having the force and effect of standards and criteria to carry out the purposes and provisions of this act. Upon approval by the board of any such environmental standard, criterion, rule or regulation or change thereto, it shall become effective thirty days after being filed with the Secretary of State for publication in the ‘ Official Compilation of Codes, Rules and Regulations of the State of New York ’ published pursuant to section 102 of the Executive Law. This provision shall not in any way restrict the commissioner in the exercise of any function, power or duty transferred to him and heretofore authorized to be exercised by any other department acting through its commissioner to promulgate, adopt, amend or repeal any standards, rules and regulations. No such environmental standards, criterion, rule or regulation or change thereto shall be proposed for approval unless a public hearing relating to the subject of such standard shall be held by the commissioner prior thereto not less than 15 days after date of notice therefor, any pro *259 visions of law to the contrary notwithstanding. Notice shall be given by public advertisement of the date, time, place and purpose of such hearing.”
It is not at all certain that this provision for a public hearing applies to State-owned land, which, as noted, has historically been supervised by the Department of Environmental Conservation and its predecessors, as distinguished from environmental standards and plans having an impact on private uses of resources within the State. (See, e.g., Environmental Conservation Law, § 3-0303 [State-wide environmental plan]; § 17-0301 [classification of waters and adoption of standards]; and § 19-0303 [air pollution control].) Additionally, it may be noted that the Adirondack Park Agency, although not required by any statutory mandate, did, as a matter of its discretion, hold public hearings throughout the State before final submission of master plan. 6 NYCRR 196.4 is obviously implementation of the master plan to phase out nonconforming uses in those ¡areas classified under the master plan as wilderness, primitive and canoe areas.
At this stage of the proceedings, the court cannot conclude that under constitutional and statutory law the Environmental Conservation Commissioner was without power to provide for prohibition of aircraft on the named bodies of water in the forest preserve, but rather that such regulation was a valid implementation of the State policy, unless such action can be deemed arbitrary and capricious. (Cf. Hamilton v. Diamond, 70 Misc 2d 899.)
The courts will uphold and enforce regulations which are not without rational basis and wholly arbitrary. (N. Y. Jur., Administrative Law, § 102, and eases therein cited.) The extent of the power to make regulations for the use of the forest preserve was left open in Association for Protection of Adirondacks v. MacDonald (253 N. Y. 234, supra). In the course of the opinion which declared a statute authorizing the construction of a bobsled run in the forest preserve as in violation of now section 1 of article XIV" of the Constitution, specifically because of the trees which would be cut, the Court of Appeals stated (pp. 240-241): “"What regulations may reasonably be made by the Commission for the use of the park by campers and those who seek recreation and health in the quiet and solitude of the north woods is not before us in this case. The Forest Preserve and the Adirondack Park within it are for the reasonable use and benefit of the public, as heretofore stated. A very considerable use may be made by campers and others without in any way *260 interfering with the purpose of preserving them as wild forest lands.”
However, it would seem, considering noise pollution alone, which should be as much the concern of the Legislature and its representatives as are other forms of pollution such as water and air pollution (see, for example, Parks and Recreation Law, § 21.01 [relating to snowmobiles]), would justify regulations concerning the use of seaplanes and other motorized equipment on State property. The concept of prohibiting use of motor vehicles, motorized equipment, motorboats and landing of aircraft in remote wilderness areas is not new. Congress has thus created a national wilderness preservation system and prohibited certain uses in these areas. (See U. S. Code, tit. 16, § 1133.) At this stage of the proceedings it does not appear that the prohibition of aircraft landing on certain designated lakes was a determination made in an arbitrary or capricious manner.
In short, it is concluded petitioners have not shown such a clear legal right to relief as to justify granting their motion for a preliminary injunction. The motion is therefore denied and the temporary stay heretofore granted is vacated. However, petitioners are granted reasonable time to pick up and transport any passengers flown into the prohibited lakes during the period of the temporary stay.